Philip RUBLE, Plaintiff–Appellant,

v.

**UNUM LIFE INSURANCE CO. OF AMERICA, Defendant–Appellee.**

No. 89–1751.

United States Court of Appeals, Sixth Circuit.

Argued March 9, 1990.

Decided Sept. 6, 1990.

John H. MacFarlane, Holmes, Mumford, Schubel, Norlander & MacFarlane, Battle Creek, Mich., Jeanne M. Unger (argued), Traverse City, Mich., for plaintiff-appellant.

J. Michael Smith (argued), Miller, Johnson, Snell & Cumminskey, Grand Rapids, Mich., for defendant-appellee.

Before: NELSON and NORRIS, Circuit Judges, and EDWARDS, Senior Circuit Judge.

DAVID A. NELSON, Circuit Judge.

This is an action brought under Michigan law for breach of a group disability insurance contract. The insurance policy, which constitutes an· "employee welfare benefit plan" under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 *et seq.*, contains a provision purporting to reduce benefits by the amount of any social security benefits received. The parties disagree as to whether the Michigan Insurance Code of 1956 made this provision ineffective.

The defendant insurance company moved for summary judgment on the grounds that whatever the effect of the Michigan Insurance Code, the plaintiff's exclusive remedy was an action brought under § 502 of ERISA, 29 U.S.C. § 1132. The district court granted the defendant's motion and dismissed the action.

The law is clear that only pursuant to ERISA can an employee sue for benefits allegedly due under an employee welfare benefit plan. The plaintiff in this case concedes that this is not an ERISA action. Accordingly, and because the plaintiff's claim appears deficient on the merits anyway, we shall affirm the district court's judgment.

I

UNUM Life Insurance Company of America, the defendant herein, is a corporation organized in the State of Maine, where its principal place of business is located. Effective December 1, 1978, UNUM issued a group disability insurance policy to a Michigan corporation known as Cello–Foil Products, Inc. The policy recites that it was delivered in Michigan and is subject to the laws of that jurisdiction.

The policy provides that qualified employees of Cello–Foil who become totally disabled as a result of sickness or injury are entitled to receive monthly benefits de-

termined under a prescribed formula. There is a coordination of benefits provision stating that benefits otherwise payable are to be reduced by "other income benefits." As defined in the policy, the term "other income benefits" includes benefits for which the insured and his family are eligible under the United States Social Security Act.

Plaintiff Philip L. Ruble, a Michigan resident employed by Cello–Foil, lost his eyesight as a result of sickness and applied for long-term disability benefits under the policy. UNUM began paying such benefits in January of 1983, reducing the amount of the payments by the amount of the social security disability benefits that Mr. Ruble and his family were receiving.

In January of 1988 Mr. Ruble sued UNUM in the Circuit Court for Calhoun County, Michigan, alleging that the version of the Michigan Insurance Code that was in effect at the time his disability arose mandated the use of contract language under which policy benefits could not be reduced on account of social security benefits. (See *Bill v. Northwestern Nat'l Life Ins. Co.,* 143 Mich.App. 766, 373 N.W.2d 214 (1985), *lv. den.,* 425 Mich. 877, 389 N.W.2d 863 (1986), quoting portions of the Michigan Insurance Code as in effect prior to a 1987 amendment.) Mr. Ruble's complaint, which did not purport to assert any claim under ERISA, sought declaratory relief and a judgment for money damages.

The original complaint was soon followed by an amended version asserting claims for negligent misrepresentation, breach of contract, and breach of an implied covenant of good faith. Like its predecessor, the first amended complaint did not purport to rely on ERISA.

Asserting the existence of original federal jurisdiction under both 28 U.S.C. § 1332 (diversity of citizenship) and 29 U.S.C. § 1132 (ERISA), UNUM removed the case to the United States District Court for the Western District of Michigan. After a flurry of motions, the parties filed a stipulation providing for dismissal of both a motion for remand to the state court and a motion for dismissal on preemption grounds. The stipulation provided further that the plaintiff could file "a Second Amended Complaint stating alleged claims against defendant under the Employee Retirement Income Security Act (ERISA), 29 USC §§ 1001–1461."

The second amended complaint, which asserted only a claim for damages resulting from breach of the insurance contract as allegedly modified by the Michigan Insurance Code, expressly averred that "[j]urisdiction of this court is conferred by 29 USC sec 1132(e) [ERISA § 502(e)] because the subject group disability insurance contract is an employee benefit subject to ERISA." (The statutory subsection cited in this jurisdictional allegation provides that federal and state courts shall have concurrent jurisdiction over actions brought pursuant to 29 U.S.C. § 1132(a)(1)(B); the latter subsection provides that a civil action may be brought by a beneficiary to recover benefits due him under the terms of an ERISA plan.)

UNUM filed an answer in which the company asserted a number of defenses, including preemption by ERISA, but admitted the jurisdictional allegation quoted above. The parties then filed a joint status report in which, among other things, the plaintiff requested leave to file yet another amended complaint. After the plaintiff waived his demand for a jury trial, and pursuant to stipulation, a third amended complaint was duly filed.

The third amended complaint omitted all reference to ERISA. The earlier reference to 29 U.S.C. § 1132(e) was dropped, and jurisdiction was predicated solely on diversity of citizenship, the amount in controversy, and 28 U.S.C. § 1446, a statute dealing with the procedure for removal.

The gravamen of the claim asserted in the third amended complaint was essentially unchanged. As before, the complaint asserted that UNUM's deductions under the coordination of benefits provision constituted a breach of contract because Michigan's Insurance Code mandated the inclusion in the policy of a provision under which there could be no such deductions. While alleging that the defendant had con-

cealed the fact that the policy's coordination of benefits provision conflicted with the provision required by statute, the pleading made no claim for additional damages in that regard; we presume that the allegation was included simply to meet waiver and estoppel defenses to which UNUM had referred in its earlier answer.

The parties filed cross-motions for summary judgment. The district court denied the plaintiff's motion and granted the defendant's. This appeal followed.

## II

Subject to qualifications not relevant here, see 29 U.S.C. § 1003, any plan established by an employer to provide employee disability benefits, whether through the purchase of insurance or otherwise, is an "employee welfare benefit plan" to which ERISA applies. 29 U.S.C. §§ 1002(1) and 1003. ERISA regulates such plans "comprehensively." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 44, 107 S.Ct. 1549, 1551, 95 L.Ed.2d 39 (1987). And ERISA creates a federal cause of action, enforceable either in federal district court or in any state court of competent jurisdiction, for a plan beneficiary who seeks "to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

ERISA further provides, subject to a savings clause found in 29 U.S.C. § 1144(b), that the provisions of the subchapter in which the federal cause of action is created "shall supersede any and all State laws" insofar as such state laws relate to employee welfare benefit plans covered by ERISA. Among the "State laws" superseded by reason of this preemption clause, we have held, is the common law right to sue for breach of contract. *McMahan v. New England Mut. Life Ins. Co.*, 888 F.2d 426 (6th Cir.1989).

Were it not for ERISA's savings clause, all state laws regulating the content of benefit plans covered by ERISA would be superseded as well. The savings clause, however, carves out an exception for "any

law of any State which regulates insurance...." 29 U.S.C. § 1144(b)(2)(A). The Michigan Insurance Code clearly regulates insurance. If, as Mr. Ruble contends, the Insurance Code operated to write UNUM's coordination of benefits provision out of the group insurance policy, at least as to deductions on account of social security benefits, nothing in ERISA would prevent the insurance policy from being enforced in its statutorily modified form. See *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985) (Massachusetts insurance law mandating minimum health insurance benefits was not preempted by ERISA); *Northern Group Servs., Inc. v. Auto Owners Ins. Co.*, 833 F.2d 85 (6th Cir.1987) (Michigan insurance law mandating coordination of automobile insurance benefits was not preempted by ERISA), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1754, 100 L.Ed.2d 216 (1988).

Regardless of how Michigan's insurance code might have modified the terms of the UNUM insurance policy, however, any action brought by a beneficiary to enforce the policy as so modified could only be brought under § 502 of ERISA, 29 U.S.C. § 1132. We should have supposed that plaintiff Ruble's counsel recognized this in drafting the second amended complaint. That version omitted the common law tort and implied contract claims asserted in the earlier amendment—claims similar to common law claims held preempted by ERISA in *Pilot Life Insurance Co. v. Dedeaux*—and confined itself to what appears to have been a straight-forward ERISA claim.

The third amended complaint, on the other hand, was designed to convert the ERISA claim back into a state-law claim. The third amended complaint pleaded a breach of contract claim arising solely under the law of Michigan.

Mr. Ruble has been very clear on this. On page one of his opening brief in this court, Ruble tells us that "[p]laintiff's Third Amended Complaint alleged *only* a *state* cause of action in breach of contract." (Emphasis supplied.) When asked at oral argument if the third amended complaint,

read in the context of ERISA, could not be interpreted as bringing a civil action under 29 U.S.C. § 1132 [ERISA § 502], Ruble's counsel replied "I believe that this is a state common law action...." In response to a question on why she would not wish to avail herself of the opportunity to bring an action under ERISA, counsel explained that "it was decided that this claim would not be brought under ERISA for a specific reason, and that is ... the *Bill* case [373 N.W.2d 214, *supra* ] ... upon which Mr. Ruble has based his claim of rights under the Michigan Insurance Code." (As indicated above, we believe that an assertion of rights under the Michigan Insurance Code, as interpreted by *Bill*, would have been permissible in an ERISA action; plaintiff's counsel evidently thought otherwise.) Asked directly if "[y]ou do not want to bring an ERISA action," counsel replied thus: "[A]t this present time, I do not want to bring an ERISA action. No."

No court can force Mr. Ruble to bring an ERISA action if, for whatever reason, he does not want to. Still, if the substance of the state-law claim is identical in all respects to the substance of the claim that could have been brought under ERISA,[1] we would feel somewhat uncomfortable about allowing the complaint to be dismissed solely because the plaintiff refuses to acknowledge that his action is being brought because 29 U.S.C. § 1132 says it may be brought, and not because the law of Michigan says it may be brought. Were it not for what we have learned through the briefs and in oral argument, indeed, we could not have been altogether certain that the claim asserted in the third amended complaint was not, in fact, intended to be an ERISA claim.

Be that as it may, any uneasiness we might otherwise have had about the action taken by the district court in this case is assuaged by the knowledge that developments subsequent to the decision of *Bill v. Northwestern National Life Insurance Co.*, 373 N.W.2d 214, *supra*, strongly suggest that inclusion of the coordination of benefits provision in the UNUM policy was not unlawful under the Michigan Insurance Code, and that Mr. Ruble has received and is receiving all the disability benefits to which he is entitled. Even if Mr. Ruble had been willing to proceed with an ERISA action, in other words, the courts probably would have concluded that no additional benefits were due him under the terms of his plan.

As pointed out in *Bill*, Mich.Comp.Laws § 500.2236(6)(d) provided that Michigan's Commissioner of Insurance could exempt from the filing requirements of that section any insurance document or form "the filing and approval of which are not desirable or necessary for the protection of the public." 373 N.W.2d at 216. In 1968 the Insurance Commissioner issued an order exempting from the Insurance Code's filing and approval requirements all group disability insurance policies. *Id.* If the Commissioner's 1968 order was authorized by law, delivery in Michigan of group disability policies in a form not filed with the Insurance Commissioner would not be in violation of the Insurance Code, and such policies would not have to be "construed" (see Mich.Comp.Laws § 500.3468(2)) as including the "other insurance" provision authorized by Mich.Comp.Laws § 500.3440. (Prior to the 1987 amendment, 1987 Mich.Pub. Acts 52, the provision authorized by

---

**1.** There may not be a complete identity here. The third amended complaint asks for recovery of "future" damages, for example, whereas the remedy available under ERISA in respect of benefits not yet payable would appear to be limited to a declaratory judgment "to clarify [the plaintiff's] rights to future benefits under the terms of the plan." We cannot be sure that other differences may not exist—and as we said in holding that the *McMahan* state-law claim came within ERISA's preemption clause, subjecting an ERISA fiduciary to the vagaries of

state contract law regarding its benefits decisions would create the very real prospect that the fiduciary's administrative scheme would be subject to conflicting requirements in the various states. *See Kanne v. Connecticut Gen. Life Ins. Co.*, 859 F.2d 96 (9th Cir.1988) (holding that California's common law contract interpretation as it applies to insurance contracts falls under the ERISA pre-emption doctrine) [, *cert. denied,* — U.S. ——, 109 S.Ct. 3216, 106 L.Ed.2d 566 (1989) ]." *McMahan*, 888 F.2d at 429.

§ 500.3440 did not provide for any offset of social security benefits.) [2]

*Bill* held that the Insurance Commissioner was without authority to issue his 1968 order exempting group policies from the filing and approval requirements. The Michigan Legislature disagreed with that holding, and passed an amendatory act designed to "rectify" what the act calls "the misconstruction of the insurance code of 1956 by the court of appeals in *Bill v. Northwestern Life Insurance Company*, 143 Mich.App. 766, 373 N.W.2d 214 with respect to the power of the insurance commissioner to exempt certain insurance documents from filing requirements and the offsetting of social security benefits against disability income insurance benefits." 1987 Mich.Pub.Acts 52, § 2, as quoted in note following Mich.Comp.Laws Ann. § 500.2236 (West Supp.1990). The amendments—which had the effect of ratifying the Commissioner's 1968 order *nunc pro tunc*, see §§ 500.2236(6)(d), 500.3440, and 500.3606(2), as amended—were, according to § 2 of the amendatory act, "intended to codify and approve long-standing administrative and commercial practice taken and approved by the commissioner pursuant to his or her legal authority. This amendatory act shall serve to cure and clarify any misinterpretation of the operation of such sections since the effective date of their original enactment."

In an unpublished opinion filed on January 10, 1989, in *Spray v. UNUM Life Insurance Co. of America*, Civil Action No. G87–463–CA5, the United States District Court for the Western District of Michigan (Bell, J.) declared that retrospective application of the amendatory act would not impair any vested contract rights acquired under the pre–1987 law because the amendatory act "was *curative* to correct a judicial misconstruction." Slip Op. at 7, emphasis in original.[3] The plaintiff in *Spray* was an employee who first became insured under a group disability policy in 1972 and suffered a disabling stroke in 1980. The policy contained a coordination of benefits provision that may well have been identical to the one at issue here, UNUM having

---

**2.** Mr. Ruble argues that regardless of any filing and approval requirements, the "other insurance" provision set forth in § 500.3440 had to be contained in all disability insurance policies, whether individual or group policies, by reason of § 500.3430. We do not read the law as imposing such a requirement as far as group disability policies are concerned.

Section 500.3430 provides, subject to an exception that may itself be applicable here, that no insurance policy governed by Chapter 34 of the Insurance Code (dealing with disability insurance) "shall contain provisions respecting the matters set forth in sections [500.3432 through 500.3454] unless such provisions are in the words in which the same appear in such sections...." But the first section of Chapter 34 contains a provision, § 500.3400(4), stating explicitly that except for a designated section dealing with payments to chiropractors, podiatrists and psychologists, the provisions of Chapter 34 shall apply to *group* disability insurance contracts "only as provided in Chapter 36." Nothing in Chapter 36 mandates the inclusion in *group* disability policies of the § 500.3440 provision on which Mr. Ruble relies. The argument based on § 500.3430 is thus fatally flawed, in our view.

It may well follow that the "other insurance" provision authorized by § 500.3440 would not have to be included in group disability policies even if the Insurance Commissioner's 1968 suspension of filing and approval requirements for group policies was a nullity. Section 500.-3468(2) says that policies issued in violation of the Insurance Code "shall be held valid but shall be construed as provided in this code. When any provision in a policy subject to this chapter is in conflict with any provision of this chapter, [the insurer's obligations] shall be governed by the provisions of this chapter." By virtue of § 500.3400(4), there would appear to be no such "conflict" in the case of group policies, whether or not such policies were supposed to be filed with and approved by the Insurance Commissioner.

**3.** *Cf. Priest v. Canada Life Assurance Co.*, 179 Mich.App. 731, 446 N.W.2d 352 (1989), *application for leave to appeal pending*, where a Michigan Court of Appeals reached the same result under a somewhat different analysis:

"The 'right' which plaintiffs claim to have lost through the operation of 1987 P.A. 52 was merely the right to avoid the express terms of the contract. 1987 P.A. 52 did not impair a right which should be protected, but, rather, allowed the contract to be enforced according to its express terms. See *Guardian Depositors Corp. v. Brown*, 290 Mich. 433, 443, 287 N.W. 798 (1939). Any expectation which plaintiffs might have had that the policy's reductions clause would not be enforced did not rise to the level of a vested right." 446 N.W.2d at 355 (citations omitted).

been the insurer in both cases. Like Mr. Ruble, Mr. Spray relied on *Bill;* but "insofar as Spray depended on *Bill* for the vesting of his rights, such rights were based on a misconstruction of M.C.L. § 500.2236 that, properly construed, actually could permit coordination of group policy and social security benefits. Since the insurance policy provided for coordination of disability and social security benefits, Spray was only entitled to the coordinated and reduced amount at any time. *Romein v. General Motors Corp,* 168 Mich.App. 444[,425 N.W.2d 174] (1988) [, *lv. granted* 432 Mich. 891 (1989)]." Slip Op. at 7–8. The district court concluded that "under Michigan law, if the policy is a *group* policy, its [coordination of benefits] provisions are legally permissible." *Id.* at 9. (Emphasis supplied.) *Accord Kouri v. Equitable Life Assurance Soc'y of U.S.,* 716 F.Supp. 1018 (E.D.Mich.1989) (sustaining 1987 Mich.Pub.Acts 52 against separation of powers and contracts clause challenges under Michigan Constitution, Mich. Const. art. 3, § 2; art. 1, § 10).

The views of a Michigan federal district judge on questions of Michigan law are entitled to great respect, of course, and if *Spray* is right, Mr. Ruble could have recovered nothing in the case at bar even if his action had not been dismissed for refusal to proceed under ERISA. Notwithstanding the reservations we have noted about the metaphysical underpinnings of the district court's holding in this case, we conclude, all things considered, that the judgment ought to be, and it hereby is,

AFFIRMED.