82 F.3d 418
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Daniel GREEN, Plaintiff-Appellant,
v.
CORPORATE GROUP SYSTEMS; Andy's Statewide Heating and
Cooling, Inc., Defendants-Appellees.
 No. 95-1026.
 United States Court of Appeals, Sixth Circuit.
 April 12, 1996.
 
 Before: MARTIN and BATCHELDER, Circuit Judges; and OLIVER,* District Judge.
 PER CURIAM.
 
 
 1
 This is an appeal from a grant of summary judgment to the defendants, and the material facts are not in dispute. On June 21, 1992, Daniel Green was injured when the motorcycle he was riding hit a rut in the street causing the motorcycle to go out of control and causing Green to hit a parked truck. Green suffered several injuries requiring medical treatment and surgery. At the time of the accident, Green was an employee of Andy's Statewide Heating and Cooling, Inc. and was covered by his employer's "Employee Medical Benefits Plan." Andy's Statewide's plan administrator was Corporate Group Systems. Corporate Group Systems administers healthcare insurance plans for several organizations. At the time of the accident, Green was not covered by an insurance policy for the operation of his motorcycle, having allowed his State Farm Insurance Co. policy to lapse in February 1992 for nonpayment of premiums.
 
 
 2
 Corporate Group Systems refused to authorize payment of Green's medical bills. Andy's Statewide's medical benefits plan contains fifty-five exclusions, including exclusion number 48. This exclusion provides that a beneficiary is not entitled to medical coverage,
 
 
 3
 [f]or an injury arising out of the ownership, operation, maintenance or use (to include passengers), including loading and unloading of any motor vehicle covered, or eligible to be covered under a Michigan no-fault insurance policy or similar no-fault policy.
 
 
 4
 Corporate Group Systems interpreted the term "motor vehicle" in this exclusion to include "motorcycle." Corporate Group Systems then concluded that Green's motorcycle was a motor vehicle eligible to be covered under a Michigan no-fault insurance policy, and denied coverage. Until Green's policy with State Farm lapsed, Green had been covered by just such a no-fault policy for the operation of his motorcycle.
 
 
 5
 Green subsequently filed suit in state court. Corporate Group Systems removed the action to federal court on the basis of 29 U.S.C. § 1132 of the Employee Retirement Income Security Act of 1974 ("ERISA"). Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 66 (1987) (permitting a defendant to remove an action based on the defense of preemption where plaintiff's state law claims are properly characterized as a claim for benefits under 29 U.S.C. § 1132(a)(1)(B)). Green filed a motion to remand to state court which was denied.
 
 
 6
 On October 27, 1993, Green amended his complaint to add Andy's Statewide as a defendant. All counts in Green's amended complaint are premised on his contention that his injuries are covered by Andy's Statewide's medical benefits plan.[1] Corporate Systems Group moved for summary judgment; Andy's Statewide joined the motion. In its motion, Corporate Systems Groups argued that Green's state law claims were preempted by ERISA, that Green cannot recover under the provisions of ERISA, and that Green did not state a valid claim for exemplary damages.
 
 
 7
 Green responded by claiming that since his state law claims required an interpretation of Michigan's no-fault insurance law, they were "saved" from preemption by 29 U.S.C. § 1144(b)(2)(A). Section 1144(b)(2)(A) saves from preemption state laws regulating insurance, banking or securities. The district court rejected Green's argument, holding, pursuant to Ruble v. UNUM Life Ins. Co., 913 F.2d 295 (6th Cir.1990), that the essence of Green's claim was for enforcement of an employee welfare plan, and that such claim, regardless of how Michigan's insurance law might modify the terms of the contract, could only be brought under 29 U.S.C. § 1132(a)(1)(B).[2] The district court concluded that 29 U.S.C. § 1144(a)[3] preempted the state law claims and therefore granted Corporate Systems' motion for summary judgment.
 
 
 8
 In reaching its decision, the district court examined the Michigan laws at issue and concluded, as Corporate Group Systems had, that Green's motorcycle was a vehicle "eligible to be covered" as defined by Michigan's no-fault insurance law. The district court also noted that Michigan courts had construed the term "motor vehicle" to include motorcycles where the term was undefined. See, e.g., Auto-Owners Ins. Co. v. Ellegood, 386 N.W.2d 640 (Mich.Ct.App.1986) (reasoning that the ordinary and popular use of term "motor vehicle" includes motorcycles). With this background, the district court concluded that Corporate Group Systems' determination that Green's injuries were excluded from coverage was not arbitrary and capricious. Andy's Statewide's medical benefits plan gave its plan administrator the "absolute discretion" to determine eligibility for benefits. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 114 (1989) (holding that a denial of benefits challenged under Section 1132(a)(1)(B) is reviewed de novo unless the benefit plan gives the administrator discretionary authority to determine eligibility for benefits, in which case a denial of benefits is reviewed for abuse of discretion); Davis v. Kentucky Fin. Cos. Retirement Plan, 887 F.2d 689, 693-94 (6th Cir.1989), cert. denied, 495 U.S. 905 (1990) (citing Firestone ) (stating that the district court correctly applied an "arbitrary and capricious" standard to an administrator's decision denying benefits where the administrator had discretionary authority). This Court applies the same standard of review. Tiemeyer v. Community Mut. Ins. Co., 8 F.3d 1094, 1098-99 (6th Cir.1993), cert. denied, 114 S.Ct. 1371 (1994).
 
 
 9
 Green argues first that removal of his case to federal court was improper because, due to the fact that Michigan insurance laws are "involved," his claims are not preempted by ERISA. Second, Green argues that even if his state law claims are preempted, Corporate Group Systems abused its discretion by misinterpreting Michigan law so as to define a motorcycle as a "motor vehicle" and also to conclude that his motorcycle is "eligible to be covered" under a Michigan no-fault insurance policy.
 
 
 10
 Michigan law requires virtually all motor vehicles, unless exempted or excluded by definition, to be covered by a valid policy of no-fault insurance. Mich.Comp.Laws Ann. §§ 500.3101-3179 (West 1993). Michigan's no-fault automobile insurance scheme has been described by the Michigan Supreme Court as follows:
 
 
 11
 Enactment of the Michigan No-Fault Insurance Act [1972 P.A. 29] signalled a major departure from prior methods of obtaining reparation for injuries suffered in motor vehicle accidents. The Legislature modified the prior tort-based system of reparation by creating a comprehensive scheme of compensation designed to provide sure and speedy recovery of certain economic losses resulting from motor vehicle accidents. Under this system, losses are recovered without regard to the injured person's fault or negligence. M.C.L. § 500.3105(2); M.S.A. § 24.13105(s). The Act contemplates that in a majority of cases, specific recognized losses suffered as a result of motor vehicle accidents will be compensated for by a person's own insurer. M.C.L. § 500.3114(1); M.S.A. § 24.13114(1).
 
 
 12
 Owners and registrants of motor vehicles required to be registered in Michigan must maintain security for payment of benefits under personal protection insurance, property insurance and residual liability insurance.
 
 
 13
 Belcher v. Aetna Casualty and Surety Co., 293 N.W.2d 594, 599 (Mich.1980) (citations omitted). While Michigan motorcycle owners or registrants are not required to carry no-fault insurance, they are required to maintain security for injuries caused to third parties arising out of the ownership, maintenance or use of a motorcycle. Mich.Comp.Laws Ann. § 500.3103[4]; Underhill v. Safeco Ins. Co., 284 N.W.2d 463, 466 (Mich.1979). A motorcycle owner or operator may, however, recover no-fault benefits from the owner or registrant of a motor vehicle when the motorcyclist is involved in an accident arising out of the ownership, operation, maintenance or use of a motor vehicle. Underhill, 284 N.W.2d at 465; Mich.Comp.Laws Ann. § 500.3114(5) (motorcyclist looks first to the insurer of the owner or registrant of the motor vehicle involved in the accident). In the instant case, though, the parties agree that under these facts Green cannot recover from the no-fault insurer of the owner of the parked car. Mich.Comp.Laws Ann. § 500.3106(1) (no-fault insurance act generally disallows recovery where bodily injury caused by accident with a parked vehicle). Finally, the Michigan Court of Appeals has held that nothing in the Michigan no-fault insurance act precludes motorcycle owners from purchasing no-fault insurance, even though they are not required to purchase such insurance. Burk v. Warren, 307 N.W.2d 89, 91 (Mich.Ct.App.1981), modified on other grounds, 360 N.W.2d 585 (1983); Bray v. Frankenmuth Mutual Ins. Co., 284 N.W.2d 749, 750 (Mich.Ct.App.1979) (motorcycle owner with nonrequired no-fault insurance coverage for his motorcycle could recover under the no-fault policy for injuries he incurred in accident where he lost control of the motorcycle and no "motor vehicle" was involved).
 
 
 14
 First, we conclude that removal was proper. Green's state law claims are properly characterized as a single claim for benefits under an employee welfare plan. Such a claim is properly brought under the civil enforcement provision of ERISA, Section 1132(a)(1)(B). Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 60-62 (1987); Warner v. Ford Motor Co., 46 F.3d 531, 534 (6th Cir.1995) (en banc) (stating that ERISA preemption is "narrowly limited ... to state common law or statutory claims that fall within the ERISA civil enforcement provision of ... Section 1132(a)(1)(B)). Congress's purpose in providing preemption of state law claims was to enable employee benefit plans to be administered in a uniform way without being affected by divergent regulatory schemes in different states. Fort Halifax Packing Co. v. Coyne, 482 U.S. 1 (1987). Thus, Congress created an exclusive federal remedy under Section 1132(a)(1)(B) for claimants who are denied benefits under an employee welfare plan. We agree with the district court that the character of Green's cause of action is one for civil enforcement under Section 1132(a)(1)(B) "no matter how Michigan's insurance code might have modified the terms of the ... insurance policy." UNUM Life Ins. Co., 913 F.2d at 297. Thus, the district court properly denied Green's motion to dismiss for improper removal.
 
 
 15
 Green also believes that, because Mich.Comp.Laws Ann. § 500.3103 is "saved" from preemption by ERISA's savings clause, his state law contract and tort claims are also saved from preemption. We reject this reasoning. The pertinent part of Section 500.3103 simply states that motorcycle owners or registrants are required to carry third party liability insurance. That's all. The provisions of this statute have no bearing on the question of whether Green's state law claims "relate to" an employee welfare plan and are therefore preempted. To go one step further than did the district court, Section 500.3103 does not even "modify" the terms of Andy's Statewide's medical benefits plan.
 
 
 16
 The question before us is whether the plan administrator abused its discretion by determining that a motorcycle is a motor vehicle eligible to be covered under a Michigan no-fault insurance policy. Section 500.3103 does not shed much light on this question, other than to state that motorcycles are not required to have such insurance. Neither does Section 500.3103 require the plan administrator to interpret the term "motor vehicle" in exclusion 48 exactly as Michigan defines the term for purposes of its no-fault scheme. Even if the plan administrator had interpreted "motor vehicle" as Michigan does in its no-fault insurance act--to exclude motorcycles from the term "motor vehicle"--motorcycle operators are still eligible to purchase no-fault insurance coverage under Michigan law. Burk, 307 N.W.2d at 91; Bray, 284 N.W.2d at 750. Thus, we believe that Section 500.3103, although saved from preemption because it is an insurance law, provides little guidance to an administrator interpreting Andy's Statewide's plan exclusion and certainly does not save Green's state law claims which in reality constitute a single claim for benefits under the civil enforcement provision of ERISA.
 
 
 17
 To summarize, Michigan courts have construed "motor vehicle" to include "motorcycle" in a handful of cases, relying on the popular and ordinary meaning of "motor vehicle." See, e.g., Kozma v. Auto-Owners Ins. Co., 481 N.W.2d 715, 715 (Mich.1992) (holding that a motorcycle is a motor vehicle for purposes of the exclusionary provision of an insurance contract); Bianchi v. Automobile Club, 467 N.W.2d 17, 19 (Mich.1991) (reaching the same conclusion where contract language ambiguous). Corporate Group Systems did not abuse its discretion by using the same interpretation. The question remains whether Corporate Group Systems abused its discretion in determining that a motorcycle is a motor vehicle "eligible to be covered" under a Michigan no-fault policy. Under the cases of Burk and Bray cited above, it is clear that Michigan motorcycle owners are eligible to purchase no-fault insurance. Thus, the plan administrator did not abuse its discretion in determining that Green was eligible to be covered by a no-fault insurance policy.
 
 
 18
 Based on the foregoing, we AFFIRM the decision of the district court.
 
 
 
 *
 The Honorable Solomon Oliver, Jr., United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 [1]
 Count I is for Breach of Contract by Corporate Group Systems based on its breach of a duty to pay Green's medical bills; Count II is for negligence by Corporate Group Systems in fulfilling its duties as plan administrator and for not being familiar with Michigan law; Count III is against Andy's Statewide for "Contract Liability," a breach of contract claim identical to Count I; and Count IV is against Andy's Statewide for Principle/Agent liability for Corporate Group System's alleged negligence
 
 
 [2]
 29 U.S.C. § 1132(a)(1)(B) provides in pertinent part:
 A civil action may be brought--
 (1) by a participant or beneficiary--
 * * *
 (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan; ....
 
 
 [3]
 Section 1144(a) provides:
 Except as provided in subsection (b) of this section, the provisions of this title and title IV shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan.
 (Emphasis Added).
 
 
 [4]
 Section 3103 provides in pertinent part:
 (1) An owner or registrant of a motorcycle shall provide security against loss resulting from liability imposed by law for property damage, bodily injury, or death suffered by a person arising out of the ownership, maintenance, or use of a motorcycle....