INTERNATIONAL RESOURCES, INC.;
Larry E. Smith, Plaintiffs–
Appellees,

v.

NEW YORK LIFE INSURANCE
COMPANY, Defendant–
Appellant.

Nos. 91–5523, 91–8527

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 24, 1991.

Decided Nov. 26, 1991.

Rehearing and Rehearing En Banc
Denied Jan. 15, 1992.

Danny C. Reeves, Anne Adams Chesnut (Argued and Briefed), James G. LeMaster, Greenebaum, Doll & McDonald, Lexington, Ky., for plaintiffs-appellees.

Robert G. Breetz, Stites & Harbison, Louisville, Ky., A.J. Harper, II, (Argued and Briefed), Nancy L. Patterson (Briefed), Fulbright & Jaworski, Houston, Tex., for defendant-appellant.

Before MARTIN and JONES, Circuit Judges, and WELLFORD, Senior Circuit Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

International Resources, Inc. and its president, Larry E. Smith, allege New York Life Insurance Company violated Kentucky contract and tort law when the insurance company proposed cancellation of a group health insurance policy issued to the plaintiffs.

We must resolve the following questions: (1) does the Employment Retirement Income Security Act preempt all of the plaintiffs' state law claims; and, (2) did the district court abuse its discretion by granting a preliminary injunction that compels New York Life to continue making payments under the disputed coverage. For the reasons given below, we affirm the district court's decision with regard to the preliminary injunction and we affirm in part and reverse in part the district court's determination that ERISA preempts the plaintiffs' state law claims. We remand this case for further proceedings not inconsistent with this opinion.

## I. BACKGROUND

In 1982, International Resources purchased group medical insurance coverage arranged by Group Marketing Services, Inc., a multi-employer trust. The insurance was administered by Group Marketing Services trust administration and underwritten by the Life Insurance Company of North America. International Resources, in its arrangement with Group Marketing Services, selected both the terms and the price for its employee coverage. All International Resources' employees were automatically covered by the plan and the company paid the insurance premiums. At the time International Resources first obtained coverage, the company had six employees; it now has two employees. On April 1, 1983, Trans Pacific Life Insurance Company succeeded the Life Insurance Company of North America as underwriter.

Larry Smith owns 75% of International Resources' stock. Smith and his dependents were insured for major medical expenses under the plan arranged by International Resources with Group Marketing Services. On May 8, 1983, Smith's son, Mark, was severely injured in an automobile accident. Mark Smith is now a mute quadriplegic and requires nursing care twenty-four hours a day.

On March 1, 1986, New York Life succeeded Trans Pacific as the underwriter for International Resources' policy. In October, 1988, New York Life announced cancellation of the group policy provided through Group Marketing Services; continuation of benefits under the policy were to cease on October 1, 1989. International Resources and Smith brought suit against New York Life in federal district court, seeking declaratory and other relief for injuries arising out of the proposed cancellation. The district court granted an injunction compelling New York Life to continue paying for Mark Smith's medical care. As part of the injunction, the court ordered International Resources to provide an escalating bond equivalent to the amount paid by New York Life for Mark Smith's treatment. Subsequently, the district court ruled that ERISA preempted all of International Resources' and Smith's state law claims.

Both New York Life and the plaintiffs first appealed this matter in December, 1990. New York Life appealed the preliminary injunction requiring it to continue providing payments under the disputed coverage. At the same time, International Resources and Smith appealed the district court determination that ERISA preempted the plaintiffs' state law claims. The 1990 appeals were heard within days of two Supreme Court decisions relevant to the parties' claims. These two cases, *FMC Corp. v. Holliday*, 498 U.S. ——, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990) and *Ingersoll–Rand v. McClendon*, 498 U.S. ——, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), provide further instruction on how we should interpret ERISA's preemption provisions. Accordingly, we remanded both parties' claims to the trial court for re-consideration in light of the new case law. Upon remand, the district court reaffirmed its earlier decision giving rise to the present appeal.

## II. ERISA ANALYSIS

### A. Establishment Of An ERISA Fund

■ We must first determine whether International Resources established an ERISA plan. The two cases that we requested the district court to consider upon remand, *FMC* and *Ingersoll–Rand*, do not aid us in this initial determination. Both cases, however, are helpful to our analysis of other issues and will be discussed below.

According to the statute, ERISA "plans" include:

> [A]ny plan, fund, or program, which ... is ... established or maintained by an employer ... for the purpose of providing for its participants, or their beneficiaries, through the purchase of insurance or otherwise ... medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment....

29 U.S.C. § 1002(1) (1991). We find that, "In determining whether a plan, fund or program [exists] a court must determine whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." *Donovan v. Dillingham,* 688 F.2d 1367, 1373 (11th Cir.1982), *quoted in Brown v. Ampco–Pittsburgh Corp.,* 876 F.2d 546, 551 (6th Cir.1989).

The facts in *Donovan,* 688 F.2d at 1367, are similar to those now before us. In *Donovan,* small corporations and employee organizations purchased insurance from a group trust similar to Group Marketing Services. The trust, in turn, obtained the group policy from a life insurance company. The *Donovan* court determined that the companies and organizations subscribed to the trust "with the intent to provide health insurance." *Donovan,* 688 F.2d at 1374. All the parties involved in the *Donovan* trust determined the terms and conditions applicable to the trust by looking to the insurance policy and the insurer to formulate the eligibility requirements. *Id.* The participating employers and organizations required no more of the employees covered by the plan than was required by the insurer. *Id.* The *Dono-van* court concluded that such employers or organizations that furnished health insurance through trusts established ERISA plans. *Id.*

International Resources and Smith attempt to rebut application of *Donovan* by relying on *Taggart Corp. v. Life & Health Benefits Admin., Inc.,* 617 F.2d 1208, 1211 (5th Cir.1980), *cert. denied,* 450 U.S. 1030, 101 S.Ct. 1739, 68 L.Ed.2d 225 (1981). In *Taggart,* the Fifth Circuit established that "bare purchases of health insurance" that involve no owner control, administration, or responsibility for the policy or benefits, were insufficient to create an ERISA plan. Under *Taggart,* the plaintiffs argue, they did not create an ERISA plan and the *Donovan* analysis is inapplicable.

We find that the plaintiffs mistake the true relevance of *Taggart* and *Donovan* to their case. Admittedly, *Taggart* stands for the proposition that "ERISA does not regulate purchases of health insurance when there is no welfare plan." *Donovan,* 688 F.2d at 1375. However, *Taggart* does not hold that any employer who merely purchases a group health insurance policy or subscribes to a trust has not established or maintained an employee welfare benefit plan. Such a construction of *Taggart* is expressly rejected by the *Donovan* court. *Id.* We agree with the *Donovan* analysis and find that the *Donovan* court's construction of ERISA is more consistent with the Act's broad scope than *Taggart.* Employers can establish ERISA plans "rather easily." *Credit Managers Ass'n of Southern California v. Kennesaw Life and Accident Ins. Co.,* 809 F.2d 617, 625 (9th Cir.1987). The ERISA definition of "employee welfare benefit plan" specifically allows that ERISA plans may be established "through the purchase of insurance or otherwise." 29 U.S.C. § 1002(1); *see also Brundage–Peterson v. Compcare Health Services Insurance Corp.,* 877 F.2d 509, 511 (7th Cir.1989) ("barebones plan" for medical insurance coverage is "a common method by which employers provide health and other welfare benefits to their employees, and not one that has heretofore been

thought to take a benefits plan out of ERISA").

■ Under the *Donovan* and *Brundage* analyses, International Resources has established an ERISA plan. Several of International Resources' actions are persuasive: 1) the company contracted with Group Marketing Services for the purpose of providing insurance to its employees; 2) the company obtained the coverage for its employees; 3) the coverage was automatic and applied to all employees; and, 4) the company paid the insurance premiums. International Resources did not merely advertise alternate plans and then refrain from making any contributions on behalf of its employees. *Compare with Taggart*, 617 F.2d at 1211. Instead, International Resources chose the plan, paid the premiums, and gave this coverage to all its employees as an employee benefit. Even though Larry Smith is presently International Resources' only full-time employee, the mere fact the company no longer has several employees does not transform what was already an ERISA plan into a non-ERISA plan. This is particularly true where there is no indication that the plan would not have been offered to another full-time employee if such were hired in the future. The combination of all these facts demonstrate that International Resources established an employee benefit plan under 29 U.S.C. § 1002(1) (1991).

### B. Preemption Of State Law Claims

■ Because we have found an ERISA plan exists, we must now determine whether the plaintiffs' state law claims are preempted by the Act. ERISA will not preempt state law claims based on wrongs for which ERISA provides no remedy. *Perry v. P\*I\*E Nationwide, Inc.*, 872 F.2d 157, 162 (6th Cir.1989), *cert. denied*, 493 U.S. 1093, 110 S.Ct. 1166, 107 L.Ed.2d 1068 (1990). However, where rights are guaranteed by ERISA, the remedy for such rights under ERISA is exclusive. *Ingersoll-Rand*, 111 S.Ct. at 485–86; *see also Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 41, 107 S.Ct. 1549, 1549–50, 95 L.Ed.2d 39 (1987); *Varhola v. Doe*, 820 F.2d 809, 817 (6th Cir.1987). Moreover, Congress constructed ERISA so that the statute will preempt most state law claims. *Ingersoll Rand*, 111 S.Ct. at 483; *FMC*, 111 S.Ct. at 407–408.

■ The Supreme Court in *FMC* discusses in detail 29 U.S.C. § 1144(a) (1991), ERISA's "pre-emption clause."[1] This clause provides that all state law claims which "relate to" employee benefit plans are preempted. The *FMC* Court reaffirmed that this clause "is conspicuous in its breadth." 111 S.Ct. at 407. The Court also reiterated its finding in *Shaw v. Delta Airlines*, 463 U.S. 85, 98, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983), that Congress used the words "relate to" in this provision "in their broad sense." *Id.* at 408. *Ingersoll-Rand*, 111 S.Ct. at 478, demonstrates a similarly expansive reading of ERISA and the Court's holding that the plaintiffs' state law claim was preempted by ERISA rests on analysis of the preemption clause.

1. The *FMC* Court sets forth the three ERISA provisions—commonly referred to as "the pre-emption clause," "the saving clause," and "the deemer clause"—which instruct when a state law claim is preempted:

"Except as provided in sub-section (b) of this section [the saving clause], the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." § 514(a), as set forth in 29 U.S.C. § 1144(a) (pre-emption clause).

"Except as provided in sub-paragraph (B) [the deemer clause], nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities."

§ 514(b)(2)(A), as set forth in 29 U.S.C. § 1144(b)(2)(A) (saving clause).

"Neither an employee benefit plan ... nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies." § 514(b)(2)(B), as set forth in 29 U.S.C. § 1144(b)(2)(B) (deemer clause).

111 S.Ct. at 407. The holdings in both *FMC*, 111 S.Ct. at 403, and *Ingersoll-Rand*, 111 S.Ct. at 478, hinged on the Court's analysis of these three provisions and are relevant to our analysis.

The Supreme Court in *Ingersoll–Rand* found that a claim for wrongful termination was preempted by ERISA because the inquiry for this cause of action would be dependent upon—"relate to"—the existence of an ERISA plan. *Id.* at 483. The claim was based on an allegation that the employer fired the plaintiff as a way to avoid contributing to the plaintiff's pension fund. *Ingersoll–Rand* and *FMC* both emphasize, as well, the larger policy rationales for a broad interpretation of ERISA's preemptive powers and the importance of avoiding conflicting state rules on ERISA-related matters. *Ingersoll Rand*, 111 S.Ct. at 483; *FMC*, 111 S.Ct. at 408.

■ The saving clause, 29 U.S.C. § 1144(b)(2)(A) (1991), qualifies the preemptive force of 29 U.S.C. § 1144(a). Under the saving clause, state laws regulating insurance are not preempted by ERISA when they are "saved" by the express terms of this provision. *FMC*, 111 S.Ct. at 407. The saving clause "returns to the States the power to enforce those state laws that 'regulate insurance' *except as provided in the deemer clause.*" *Id.* at 408. The deemer clause, § 1144(b)(2)(B) thus qualifies the qualification made in the saving clause by requiring that "an employee benefit plan governed by ERISA shall not be 'deemed' an insurance company, an insurer, or engaged in business of insurance for the purposes of state laws purporting to regulate insurance companies or insurance contracts." *Id.* at 407. Analysis of the "deemer clause" was the root of the Supreme Court decision in *FMC*. There, the Court concluded that ERISA, through its deemer clause, preempted a Pennsylvania anti-subrogation statute. 111 S.Ct. at 403.

International Resources and Smith argue that four of their state law claims are not preempted but rather are saved by the saving clause. Following our remand of the issues raised by the first set of appeals, the district court rejected this argument by the plaintiffs and dismissed all of their state law claims. The court, which did not address the merits of each of the four claims individually, simply held that all the plaintiffs' state law claims were preempted "because they relate to the administration of an employee welfare benefit plan." After applying the latest Supreme Court analysis on the subject of preemption, we find that at least one of International Resources' claims has merit and is not preempted by ERISA. Thus, we partially reverse the district court determination.

■ International Resources' first claim is that Kentucky law, which forbids the cancellation of an insurance policy once liability has attached, is not preempted by ERISA. In support of this claim, International Resources cites to *Aetna Life Ins. v. Gullett*, 253 Ky. 544, 69 S.W.2d 1068 (1934) and *Carter v. Aetna Life Ins. Co.*, 272 Ky. 392, 114 S.W.2d 496 (1938). These cases, however, are based on the common law of contracts as applied to agreements to provide insurance. Because the Kentucky law relied upon merely states a rule of general applicability, rather than a rule speicifically directed toward the insurance industry and to insurance policy matters, International Resources' first state law claim is not rescued by the saving clause. *See Pilot Life*, 481 U.S. at 50–51, 107 S.Ct. at 1554–55. In *McMahan v. New England Mutual Life Insurance Co.*, 888 F.2d 426 (6th Cir.1989) we articulated the test for determining when the saving clause applies:

> [W]e must consider whether the applicable state law: (1) has the effect of transferring or spreading policyholders' risk; (2) constitutes an integral part of the policy relationship between the insurer and the insured; and (3) is limited to entities within the insurance industry.

*Id.* at 429. Under this test, which does not conflict with either *FMC* or *Ingersoll–Rand*, International Resources' first state law claim cannot survive.

■ Second, International Resources suggests that its claim for the tort of bad faith in insurance practice survives under the saving clause. International Resources relies upon *Curry v. Fireman's Fund Insurance Co.*, 784 S.W.2d 176 (Ky.1989), which limits recognition of this cause of action to the tort of illusory insurance practices. Despite the *Curry* court's restric-

tion of this tort to insurance cases, this tort is not directed to the insurance industry any more than it is directed to the law of contracts generally. The Supreme Court has taken a narrow view of the factors that shall be deemed "integral" to insurance law, finding that the law in question must affect specific terms of the insurance policy. *See Pilot Life,* 481 U.S. at 50–51, 107 S.Ct. at 1554–55; *see also McMahan,* 888 F.2d at 426. According to the *Pilot Life* Court:

> Certainly a common-sense understanding of the phrase 'regulates insurance' does not support the argument that the Mississippi law of bad faith falls under the saving clause.... Even though the Mississippi Supreme Court has identified its law of bad faith with the insurance industry, the roots of this law are firmly planted in the general principles of Mississippi tort and contract law.

Id. 481 U.S. at 50, 107 S.Ct. at 1554. Thus, International Resources' state law claim under *Curry* is preempted and not saved by the saving clause.

■ International Resources attempts a third state law claim based on Kentucky insurance code provisions that prohibit unfair and deceptive practices in the insurance business. *See* Ky.Rev.Stat. § 304.12–010, 020. The remedy for violation of these laws is created by Ky.Rev.Stat. § 446.070, which is a law of general applicability. *See State Farm Mutual Auto Insurance Co. v. Reeder,* 763 S.W.2d 116 (Ky.1988). These statutes are enforceable in an ERISA action, *see, e.g., Ruble v. UNUM Life Insurance Company of America,* 913 F.2d 295, 297 (6th Cir.1990) ("nothing in ERISA would prevent the insurance policy from being enforced in its statutorily modified form"). Because, then, the remedy is one of general applicability and conflicts with § 1132 of ERISA, it must be superseded by the remedy provided under the Act.

■ International Resources' fourth and final state law claim, that the conversion policy issued by New York Life did not conform with Ky.Rev.Stat. § 304.18–110(5), has merit and survives preemption. This Kentucky statute requires that substantial-

ly similar policies be issued by successor insurers. *Id.* As our preceding analysis demonstrates, most state law claims are not "saved" by the saving clause because such claims do not reflect statutory or common law rules that are specifically aimed at regulating the insurance industry. Here, however, and in contrast to the district court, we find the conversion statute qualifies as a state law specifically aimed at regulating the insurance industry and so is not preempted. Our determination is based upon a common-sense understanding of the phrase "regulates insurance," *see McMahan,* 888 F.2d at 429, and by our belief that this statute meets the three-prong test of *McMahan,* described *supra.* We note as well that, as a general rule, state insurance law applies to insurance policies purchased by ERISA plans. *Michigan United Food and Commercial Workers Unions v. Baewaldt,* 767 F.2d 308, 313 (6th Cir.1985), *cert. denied,* 474 U.S. 1059, 106 S.Ct. 801, 88 L.Ed.2d 777 (1986).

Several key Supreme Court cases influence our determination that International Resources' fourth claim survives ERISA preemption. In *Metropolitan Life Insurance Co. v. Massachusetts,* 471 U.S. 724, 735 n. 14, 105 S.Ct. 2380, 2387 n. 14, 85 L.Ed.2d 728 (1985), the Court found that a Massachusetts "mandated benefit law"—whereby insurers were required to provide specific medical benefits whenever a Massachusetts resident purchased a certain form of insurance—survived preemption under ERISA. The *Pilot Life* Court, 481 U.S. at 41, 107 S.Ct. at 1549–50, made express reference to *Metropolitan Life,* seemingly greatly limiting the degree to which state law claims may be deemed to have survived ERISA preemption under the saving clause. The *Pilot Life* Court held that § 1132 of ERISA—the remedies provision—provides the "exclusive vehicle for actions" if a court construes Congress intended ERISA to apply. *Id.* The *Pilot Life* Court's reading of § 1132 as a broad preemptive remedial provision is based upon Congress's explicit remarks that § 1132 was intended to be analogous to the National Labor Relations Act's broadly preemptive remedies provision. *Id.*

Admittedly, the Kentucky conversion statute does not qualify as a "mandated benefit law." Nonetheless, we find the principles of *Metropolitan Life*, as well as other Supreme Court cases, are applicable and that the plaintiffs' conversion claim survives preemption in spite of *Pilot Life*. The recent decision of *Ingersoll–Rand* directly bears upon this understanding of *Pilot Life*. In *Ingersoll–Rand*, 111 S.Ct. at 485, the Court found that the plaintiff's state law claim conflicted with 29 U.S.C. § 1140 because this provision was directed at employers who would otherwise "circumvent the provision of promised benefits." The *Ingersoll–Rand* Court addressed the potentially conflicting analyses of *Pilot Life* and *Metropolitan Life* and found that the *Pilot Life* analysis of 502(a) showed "Congress intended 502(a) to be the exclusive remedy for *rights guaranteed under ERISA*." *Ingersoll–Rand*, 111 S.Ct. at 485 (emphasis added). Thus, because we cannot fairly assume the activity Kentucky is regulating through its conversion statute is protected or guaranteed by an ERISA remedy, the *Pilot Life* analysis is inapplicable and the Kentucky statute survives preemption. *See id.*

This determination is further buttressed by *FMC*. There, the Court considered the effect the deemer clause may have on state law claims. The *FMC* Court found that "the saving clause retains the independent effect of protecting state insurance regulation of insurance contracts purchased by employee benefit plans." *Id.* 111 S.Ct. at 411. The Court then observed:

> We have identified laws governing the "business of insurance" in the Act to include not only direct regulation of the insurer but also regulation of the substantive terms of insurance contracts ... [citation omitted]. By recognizing a distinction between insurers of plans and the contracts of those insurers, which are subject to direct state regulation, and self-insured employee benefit plans governed by ERISA, which are not, we observe Congress' presumed desire to reserve to the States the regulation of the "business of insurance."

*Id.* at 410. By distinguishing between insured and uninsured plans, leaving the former open to indirect regulation though not the latter, the *FMC* Court indicates that an insurance company such as New York Life, that insures a welfare benefit plan like that purchased by International Resources, "remains an insurer for purposes of state laws purporting to regulate insurance' after application of the deemer clause." *FMC*, 111 S.Ct. at 409. The *FMC* Court's analysis not only enhances our understanding of what the phrase "regulates insurance" means, the Court clarifies that plans such as the one at issue here do not fail under deemer clause analysis. Because the standards we announced in *McMahan*, 888 F.2d at 426, are not abrogated by current Supreme Court analysis, we find that plaintiffs' claim under the Kentucky conversion statute survives preemption by ERISA.

## C. Vesting Of Welfare Benefits

 Finally, we come to a matter not addressed by the district court though raised by the parties on appeal. That is, whether or not the plaintiffs' rights have "vested" for the purpose of bringing the instant claims. We have held that pension plans are subject to statutory vesting requirements under 29 U.S.C. § 1053, although welfare plans are not. *Armistead v. Vernitron*, 944 F.2d 1287, 1297 (6th Cir. 1991). New York Life would have us believe that a welfare plan will *never* vest, because there is no statutory vesting requirement, or that such a welfare plan can only vest if it has explicit provisions providing for vesting in the plan documents. New York Life, however, misstates the law of *In re White Farm Equipment Co.*, 788 F.2d 1186, 1193 (6th Cir.1986). There, we found that we will not construe ERISA as providing a *mandatory point* for welfare benefits to vest. Nonetheless, a court may look to the parties intent to determine when vesting should occur. Such intent may be demonstrated by "agreement or by private design." *Id. See also Armistead*, at 1297–98. There may be sufficient evidence for the district court to find plaintiffs' claims have vested. However, because this point was not addressed by the

district court and because we feel that it merits further development, we direct that this issue by considered upon remand.

## III. PRELIMINARY INJUNCTION

■ We must also determine whether the preliminary injunction should continue against New York Life. Our determination requires consideration of: (1) the likelihood of success on the merits; (2) whether irreparable injury will result without the injunction; (3) the probability of substantial harm to others; and, (4) whether the public interest is advanced by the injunction. *See Christian Schmidt Brewing Co. v. G. Heileman Brewing Co.,* 753 F.2d 1354, 1356 (6th Cir.), *cert. dismissed,* 469 U.S. 1200, 105 S.Ct. 1155, 84 L.Ed.2d 309 (1985). Our review is limited to a determination of whether the district court abused its discretion. *Tate v. Frey,* 735 F.2d 986, 990 (6th Cir.1984).

The trial court's grant of injunction was based on a finding of "substantial likelihood of success on the merits from within the four corners of the insurance contract, notwithstanding application of ERISA." The court's finding derived from several factors: 1) the contract of insurance guaranteed lifetime benefits of up to $1,000,000 of which only about half had been distributed by the time of the lawsuit; 2) the New York Life certificate stated that "if a person is totally disabled when coverage ends, benefits may continue for covered expenses due to the condition which caused the disability;" and, 3) the New York Life policy stated that it would continue benefits under which Mark Smith had been receiving payments and that "an Individual's insurance with respect to [a] dependent child shall not terminate as long as the Individual's insurance remains in force and as long as [the dependent's physical] incapacity continues." Although New York Life alleges the district court's findings are erroneous, our review reveals no abuse of the court's discretion and that it acted reasonably.

The district court properly examined the remaining factors necessary for a grant of preliminary injunction. The court considered the irreparability of injury to the parties, the potential for harm to others, and the broader policy implications, should it impose the injunction. The court's determination regarding these issues was influenced by several factors: 1) the loss of the funds would adversely effect the proper maintenance of Mark Smith's health; 2) the litigation was making the retention of qualified medical caretakers difficult; 3) interruption of the care might cause irreversible physical harm to Mark Smith; 4) a bond posted by the plaintiff would protect New York Life's financial outlay; and, 5) only the parties to this litigation are at risk of any substantial harm.

The district court's determination that there was a likelihood of substantial harm due to interrupted care is a factual finding that we will not disturb unless clearly erroneous. *United States v. United States Gypsum Co.,* 333 U.S. 364, 394, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948). Contrary to New York Life's assertions, the district court's finding that Smith was having difficulty attracting medical care was supported by evidence in the form of Smith's affidavit and thus is not clearly erroneous. There are no significant public policy concerns weighing against the injunction; in fact, public policy weighs in favor of an injunction. The factors relied upon by the district court remain unaffected by our determination that the bulk of plaintiffs' claims are governed by ERISA, although one state law claim may survive. Accordingly, we find there was no abuse of discretion by the district court and the grant of preliminary injunction is upheld.

For the foregoing reasons, the determination of the district court with regard to the preliminary injunction is affirmed. The district court's judgment regarding the preclusion of state law claims is affirmed in part and reversed in part. This matter is remanded to the trial court for further proceedings not inconsistent with this opinion.

WELLFORD, Senior Circuit Judge, concurring in part and dissenting in part:

I concur in parts I and IIA of Judge Martin's opinion. I also concur in that

portion of part IIB that concludes that ERISA pre-empts three of plaintiffs' state law claims.[1]

I dissent, however, from the conclusion in part IIB that the fourth state claim, "that the conversion policy issued by New York Life did not conform with [Ky.Rev. Stat.] § 304.18–110(5), has merit and survives pre-emption." This segment of the opinion reverses the district court's decision after a prior remand in which we stated, *"While not disagreeing* with the district court's judgment, we remand ... so that the district court may consider ... this case in light of *FMC Corp. v. Holliday*, [498 U.S. ——, 111 S.Ct. 403, 112 L.Ed.2d 356] (1990), and *Ingersoll–Rand v. McClendon*, [498 U.S. ——], 111 S.Ct. [478, 112 L.Ed.2d 474] (1990)." (Emphasis added). The district court found nothing compelling in either recent Supreme Court decision to change its pre-emption decision. I continue to agree, and I would affirm the defendant's judgment.

The Supreme Court has indicated that "[ERISA's] 'carefully integrated' civil enforcement scheme ... 'is one of the essential tools for accomplishing the stated purposes of ERISA.'" *Ingersoll–Rand*, 111 S.Ct. at 482, *quoting Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 52, 107 S.Ct. 1549, 1555, 95 L.Ed.2d 39 (1987).[2] As stated by the majority, "where rights are guaranteed by ERISA, the remedy for such rights under ERISA is exclusive." This is not to say, however, that enforcement of rights under "a comprehensive statute such as ERISA" need be as extensive or encompassing as a pre-empted state remedy. *Ingersoll–Rand*, 111 S.Ct. at 482; *see Pilot Life*, 481 U.S. at 53–54, 107 S.Ct. at 1556 (indicating that ERISA pre-empts a state claim for improper processing even though ERISA, unlike the state claim, does not allow punitive damages).

Under the civil enforcement provisions of § 502(a) [29 U.S.C. § 1132(a)], a plan participant or beneficiary may sue to recover benefits due under the plan, to enforce the participant's rights under the plan, or to clarify rights to future benefits. Relief may take the form of accrued benefits due, a declaratory judgment on entitlement to benefits, or an injunction against a plan administrator's improper refusal to pay benefits. A participant or beneficiary may also bring a cause of action for breach of fiduciary duty, and under this cause of action may seek removal of the fiduciary. §§ 502(a)(2), 409. In an action under these civil enforcement provisions, the court in its discretion may allow an award of attorney's fees to either party. *Pilot Life*, 481 U.S. at 53, 107 S.Ct. at 1556.

Thus the *Pilot Life* court implied that although ERISA did not provide for punitive damages, ERISA pre-empted the plaintiffs' more beneficial state law claims. The *Ingersoll–Rand* opinion cites *Pilot Life* no less than five times in holding that a Texas wrongful discharge action would not lie even if the claimed reason for discharge was the "employer's desire to avoid contributing to or paying benefits under the employee's pension fund." *Ingersoll–Rand*, 111 S.Ct. at 479 (Syllabus).

In this case, plaintiffs may sue under ERISA for "accrued benefits due," "to enforce [Smith's] rights under the plan", "for an injunction [for] improper refusal to pay benefits," and "for breach of fiduciary duty" as set out in *Pilot Life*. If successful under ERISA on their wrongful termination of insurance benefits and "improper refusal to pay" claims, then plaintiffs have no need to seek what seem to me to be unclear "conversion" rights under Ky.Rev. Stat. § 304.18–110(5) which the majority holds are not pre-empted:

> The insurer shall not be required to issue a converted policy covering any person if such person is or could be cov-

---

1. Judge Martin states that ERISA pre-empts: 1) the claim that cancellation of the policy is forbidden "once liability has attached;" 2) "the tort of bad faith in insurance practice;" and 3) the claim of "unfair and deceptive practices in the insurance business."

2. Justice O'Connor was the author of *FMC Corp.*, *Ingersoll–Rand*, and *Pilot Life*, the latter holding that state laws on tortious breach of contract and "bad faith" of the insurance carrier, which allowed punitive damages, were pre-empted.

ered by medicare (Title XVIII of the United States Social Security Act as added by the Social Security Amendments of 1965 or as later amended or superseded). Furthermore, the insurer shall not be required to issue a converted policy covering any person if (a) such person is covered for similar benefits by another hospital or surgical or medical expense insurance policy or hospital or medical service subscriber contract or medical practice or other prepayment plan or by any other plan or program or (b) similar benefits are provided for, or available to, such person pursuant to, or in accordance with the requirements of, any statute, and the benefits provided or available under any of the sources referred to in (a) and (b) above for such person, together with the converted policy, would result in over insurance according to the insurer's standards relating to policies converted from group policies. A converted policy made available pursuant hereto shall provide substantially similar benefits but in no event be less than the minimum standards contained in KRS 304.18–120 if delivery of such converted policy is to be made in this state; and, if delivery of such converted policy is to be made elsewhere, it may be on such form as the insurer may then be offering for such conversion in the jurisdiction where such delivery is to be made and which provides substantially in compliance with that required by KRS 304.18–120.

Ky.Rev.Stat. § 304.18–110(5).[3]

The majority indicates that because they "cannot fairly assume" that ERISA provides the plaintiffs with a similar remedy, then the claimed conversion rights are not pre-empted. Plaintiffs cite, as a basis for this argument, *Perry v. P\*I\*E Nationwide, Inc.*, 872 F.2d 157 (6th Cir.1989). *Perry*, however, involved fraud in the in-

ducement in "obtaining participation" in the plan. *Id.* at 158. If the claim in *Perry* were pre-empted, then the plaintiff would not have been able to prove fraud and no plan would have existed justifying, among other things, drastic pay cuts despite preexisting collectively-bargained rates of pay. *Perry* is not analogous to this case where a plan, unchallenged for many years, was carried out to plaintiff's great benefit and the issue relates to a right to terminate. Another case relied on by the majority, *Michigan United Food & Commercial Workers Unions v. Baerwaldt*, 767 F.2d 308 (6th Cir.1985), *cert. denied*, 474 U.S. 1059, 106 S.Ct. 801, 88 L.Ed.2d 777 (1986), simply held, pursuant to *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985), that Michigan's similar "mandated benefit law" was not pre-empted. The majority concedes that Ky.Rev.Stat. § 304.18–110(5) "does not qualify as a 'mandated benefit law'." I find no basis, therefore, to conclude that *Metropolitan Life* mandates "that the plaintiff's conversion claim survives pre-emption in spite of *Pilot Life*." *Ingersoll–Rand* fully supported the rationale of *Pilot Life*.

Nor is the majority's reasoning somehow buttressed by *FMC Corp.* Plaintiffs' counsel conceded in a December 14, 1990 letter to the court, "because the employer in *FMC* was *self*-insured, the case did not involve any purchase or regulation of insurance and the result in that case instead turned on ERISA's 'deemer' clause, which all parties recognize is inapplicable here." (Emphasis in original). *FMC* holds that "[t]he pre-emption clause is conspicuous for its breadth. It establishes as an area of exclusive federal concern the subject of every state law that 'relate[s] to' an employee benefit plan governed by ERISA." *Id.*, 111 S.Ct. at 407. That language is

---

**3.** Ky.Rev.Stat. § 304.18–110(3) provides for conversion of a group "hospital or surgical benefits" policy "if coverage terminates for any reason." Whether Mark Smith's policy came within the meaning of the Kentucky statute is unclear. It is likewise unclear whether he is "covered by Medicare" or may have "similar benefits" under another policy or policies. The cost of an individual "converted" policy to provide substantial-

ly similar benefits to Mark Smith as covered by the terminated group policy is also unknown. Plaintiffs' supplemental brief at p. 18, refers to a "conversion policy offered [which] did not provide for 24–hour private duty nursing care at home." Defendant apparently offered a conversion policy, but plaintiffs question whether it provided substantially similar benefits to the group insurance coverage.

quoted in *Ingersoll–Rand. See Ingersoll–Rand,* 111 S.Ct. at 482. *FMC* held only that the "deemer clause" exempts "self-funded ERISA plans from state laws that 'regulat[e] insurance' within the meaning of the saving clause." *FMC,* 111 S.Ct. at 409.

Under *McMahan v. New England Mut. Life Ins. Co.,* 888 F.2d 426 (6th Cir.1989), it is a close question whether Ky.Rev.Stat. § 304.18–110(5), unlike the Kentucky law involved in that case, is a law which "regulates insurance within the meaning of ERISA's saving clause," *id.* at 430, but I would conclude that *McMahan* is not a basis for avoiding ERISA pre-emption of this claim.

I would hold that plaintiffs must proceed on the basis of an ERISA claim to enforce their asserted rights under the policy for the alleged improper refusal to pay and for wrongful termination. I cannot conclude or assume that ERISA provides no potential remedy to plaintiffs on their claim that New York Life failed to make benefit payments under the policy. That ERISA may provide to plaintiffs a lesser remedy than state law, is not a basis to deny pre-emption. Even if the district court were ultimately to decide that the plaintiffs do not have an ERISA claim under the circumstances, that would also not be a basis to allow plaintiffs to proceed on a pre-empted state law claim merely because "we cannot fairly assume the activity Kentucky is regulating through its conversion statute is protected ... by an ERISA remedy." [4] In fact, it appears that New York Life offered plaintiffs a conversion right to a private policy upon termination of the group major medical policy.

In any event, it is clear that plaintiffs cannot claim punitive damages in this case. This is quintessentially a contract case. To the extent vesting of benefits in this dispute must be decided, I would remand that issue to the district court with directions to determine the parties' intentions in light of the policy language, status of the plain-

tiffs, commitments made to continue benefits, if any, and the actions of the parties. The district court should consider *Armistead v. Vernitron,* 944 F.2d 1287 (6th Cir.1991); *Anderson v. Alpha Portland Indus., Inc.,* 836 F.2d 1512 (8th Cir.1988), *cert. denied,* 489 U.S. 1051, 109 S.Ct. 1310, 103 L.Ed.2d 579 (1989); *In re White Farm Equip. Co.,* 788 F.2d 1186 (6th Cir.1986); *Implement Workers v. Yard–Man, Inc.,* 716 F.2d 1476 (6th Cir.1983), *cert. denied,* 465 U.S. 1007, 104 S.Ct. 1002, 79 L.Ed.2d 234 (1984).

ERISA divides benefit plans into two classes: "welfare benefit plans" and "pension plans." *See* 29 U.S.C. §§ 1002(1) & (2)(A). The group insurance plan in *White Farm* and the one at issue here are welfare benefits plans. *White Farm,* 788 F.2d at 1187; *Musto v. American General Corp.,* 861 F.2d 897, 901 n. 2 (6th Cir.1988). Pension plans are subject to statutory vesting requirements, 29 U.S.C. § 1053, but welfare plans are not. The question the *White Farm* court decided was whether welfare benefits had vested at retirement as a matter of federal common law under ERISA.

*Vernitron,* at 1293.

On the question of the preliminary injunction discussed in part III, I agree that the injunction should continue, but, on remand to the district court, both parties should have the opportunity for a prompt hearing to determine, in light of *present* circumstances, whether: (1) "loss of [insurance] funds would adversely affect" Mark Smith's care; (2) litigation makes "retention of qualified medical caretakers difficult;" (3) other resources for health care are available; and (4) there might be some interruption in necessary care, and, if so, the effect on Mark Smith.

In summary, I concur in the conclusion that this case concerns an ERISA plan and that three of the four stated state law claims are pre-empted. I dissent in respect to the fourth, so-called Kentucky "conver-

---

**4.** The plan has provided a New York Life major medical reimbursement policy. It is unclear whether the Kentucky statute relied upon by

plaintiffs, and by the majority, applies to such a policy.

sion" right claim, because I conclude it is also pre-empted.

I concur in the remand for a determination, if necessary, whether Smith's rights under the plan were "vested." I would also remand for another prompt hearing on the propriety of the preliminary injunction.