**Delmer C. DAGUE, et al., Plaintiffs,**

v.

**GENCORP INC., Defendant.**

**No. 5:91CV2617.**

United States District Court,
N.D. Ohio,
Eastern Division.

Aug. 27, 1993.

Betty E. Grdina, Bobulsky & Grdina, Ashtabula, OH, Barry A. Macey, Indianapolis, IN, for Delmer C. Dague, Stanley D. Lawrence, John Perfilio, James P. Plant, Joe W. Stewart.

James A. Rydzel, Charles D. Weller, James O. Perrin, Jones, Day, Reavis & Pogue, Cleveland, OH, William Gorenc, Jr., Gencorp, Inc., Fairlawn, OH, for Gencorp Inc.

### MEMORANDUM OF OPINION AND ORDER

MATIA, District Judge.

The above-captioned matter is before the Court upon defendant GenCorp's Motion for Summary Judgment and Plaintiffs' Motion to Certify Class Action. Since the Court has determined that there exists no genuine issues of fact and that GenCorp is entitled to judgment as a matter of law, GenCorp's Motion for Summary Judgment is granted and plaintiffs' Motion to Certify Class Action is denied as moot.

Plaintiffs bring this ERISA action for retiree health insurance benefits. Named plaintiffs are long service GenCorp employees who retired between 1977 and 1986. Defendant GenCorp has provided medical benefits to active salaried employees since 1938,

and to salaried retirees since 1953. In response to sharply rising costs and new accounting requirements, GenCorp reviewed its health benefits and modified the medical benefits provided to active salaried employees and salaried retirees, effective January 1, 1991.

The 1991 modifications increased the deductible from $0, or $100 per family for those not enrolled in Medicare Part B, to $500 per person and $1,000 per family. The copayment feature was reduced from the previous 90, 95 and 98% to a flat 80% copayment with a stop loss of $2,000 per family. The prescription drug coverage was reduced from all but $2 of prescription cost to payment of 80% of the prescription. Coordination with the now required Medicare B was changed from the previous "exclusion" basis to a "carve out" basis.

The above modifications to salaried retirees' medical benefits are the subject of plaintiffs' three count complaint. Count I alleges a breach of the retiree health benefits plan under ERISA, section 502(a). An ERISA § 404(a)(1) fiduciary claim is asserted in Count II. Finally, plaintiffs assert a common law estoppel claim in Count III. Plaintiffs filed a Motion to Certify Class Action on October 21, 1992. GenCorp subsequently filed the instant summary judgment motion. The Court informed the parties that ruling on plaintiffs' Motion to Certify Class Action would await the instant decision on Gen-Corp's Motion for Summary Judgment.

To recover under Count I and II, plaintiffs must demonstrate that the 1991 benefit reductions constitute a breach of the Plan. Defendant GenCorp filed the instant motion for summary judgment claiming its reservation of rights to terminate or modify the Plan precluded any action for breach of the Plan under ERISA, § 502(a) and § 404(a)(1). For plaintiffs to recover under the final count, which asserts an estoppel claim, plaintiffs must establish material oral or written misrepresentations. GenCorp argues that a written ERISA plan with an unambiguous reservation of rights precludes any oral or written representations which are essential for recovery under an estoppel theory.

■ Unlike pension benefits, the instant retiree health benefits are welfare benefits and as such are not subject to an ERISA vesting standard. As stated by the Sixth Circuit in *Adams v. Avondale Industries, Inc.,* 905 F.2d 943 (6th Cir.), *cert. denied,* 498 U.S. 984, 111 S.Ct. 517, 112 L.Ed.2d 529 (1990):

> [a]lthough Congress considered imposing vesting requirements on welfare benefits, it decided to limit vesting to pension plans in order to keep costs within reasonable limits.

■ Without a vesting requirement under ERISA, the language of the plan's "written instrument" determines whether and when the instant welfare benefits are vested. As stated by the Sixth Circuit, "[t]he parties may themselves set out by agreement or private design, as set out in plan documents, whether retiree welfare benefits vest, or whether they may be terminated." *In re White Farm Equipment Co.,* 788 F.2d 1186 (6th Cir.1986). It is not necessary for the participants to establish an unambiguous bar to modification or termination in the written controlling plan documents. *International Resources, Inc. v. New York Life Insurance Co.,* 950 F.2d 294 (6th Cir.1991). Similarly, the employer is not required to establish an unambiguous reservation of rights to be ultimately successful. *Adams, supra,* at 950. In ascertaining the meaning of a health benefit plan, courts look to federal common law on contracts. *See Musto v. American General Corp.,* 861 F.2d 897 (6th Cir.1988), *cert. denied,* 490 U.S. 1020, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989).

The Court ultimately must determine whether the controlling written plan documents contain an unambiguous reservation of rights to modify or terminate the benefit Plan. *See Boyer v. Douglas Components Corp.,* 986 F.2d 999 (6th Cir.1993) (the thirty day right of termination language in the Plan documents *unambiguously* reserved the employer's right to terminate the Plan). Plaintiffs concede that the Plan does not contain a specific unambiguous prohibition on Plan modification or termination. With an unambiguous reservation of rights to modify or terminate, there can be no extrinsic evidence

nor recovery under the following three counts:

Count 1) *§ 502(a) breach of contract See Musto, supra;*

Count 2) *§ 404(a)(1) breach of fiduciary duty See Adams, supra,* at 947 (A company does not act in a fiduciary capacity when deciding to amend or terminate a welfare benefits plan);

Count 3) *Common law estoppel See Sutter v. BASF Corp.,* 964 F.2d 556 (6th Cir.1992) (Written ERISA plan controls, and the employer cannot be estopped by oral representations).

In its attempt to establish a reservation of rights, GenCorp relies extensively upon recent Sixth Circuit precedent in *Musto, supra,* and *Boyer, supra.* The Sixth Circuit in *Musto* concluded that the group insurance policies and certificates were the written plan documents required under ERISA at 29 U.S.C. § 1102(a)(1). The group insurance policies were available for inspection by Musto and other retirees pursuant to 29 U.S.C. § 1024(b)(4), but not distributed to the retirees. The pertinent group policy contained the following reservation:

> The Group Policy, or any insurance coverage thereunder, may be amended or discontinued at any time, and the Company reserves the right to determine new premium contributions at any time by an announcement duly published by the Company. The Company reserves the right to determine new premium contributions from time to time and at any time. Termination of this Policy or any insurance coverage hereunder, or any amendments hereto shall not require the consent of any Employee or beneficiary, nor shall such

action require individual notice to any such person.... *Musto, supra,* at 903.

Additionally, Musto and the other retirees were provided individual certificates of insurance containing a substantially similar reservation.

In *Musto, supra,* the retiree participants were also provided the required summary plan description via several brochures. The summary plan documents "promis[ed] to continue the plans after the plaintiffs' [sic] retired, without further cost to the retiree." In the face of the apparent conflict between the language of the group policy and brochures, the Sixth Circuit in *Musto* concluded that the group insurance policies, which constituted the written plan documents, reserved the employer's right to modify or terminate the plan.[1]

In the above-cited *Boyer v. Douglas Components, supra,* the Sixth Circuit established recent precedent by reversing the trial court's judgment for salaried retiree plaintiffs after a four day bench trial. The Sixth Circuit found that the written plan documents unambiguously reserved the employer's right to terminate or modify health plan benefits. The Sixth Circuit also found error in the trial court's admission of extensive extrinsic evidence.

Twenty of twenty-six of the *Boyer* plaintiffs were employed and retired when an Aetna benefit plan was in effect. The Aetna plan documents provided to employees and retirees unambiguously reserved the right to modify or terminate the Plan.[2] When the employer was sold in 1984, Blue Cross and Blue Shield of Michigan ("BCBSM") replaced Aetna as the health care insurer. Although BCBSM plan handbooks and plan outline booklets were distributed describing the ben-

---

1. It is important to note that the Sixth Circuit reversed the trial court's granting of Mustos' Motion for Preliminary Injunction because, as noted in GenCorp's Memo. in Support at 13, "plaintiffs failed to sustain their burden of showing the requisite likelihood of success on their claim." However, in the instant Fed.R.Civil P. 56 setting, plaintiffs do not bear the burden of showing likelihood of success on the merits. Rather, GenCorp bears the burden of showing their entitlement to judgment as a matter of law and the absence of any genuine issue of material fact.

2. The Aetna plan documents distributed to participants provided:

> Your employer hopes to continue the Plan indefinitely but, as with all group plans, the Plan may be changed or discontinued.
> It is hoped that this Plan will be continued indefinitely, but, as is customary in group plans, the right of change or discontinuance at any time must be reserved.

efits retirees were entitled to receive under the BCBSM plan, the documents did not reserve the employer's right to terminate or modify the health benefit plan. The documents did indicate their summary nature and refer the participants to an addendum Retiree Agreement and the Group Operating Agreement between employer Douglas Corporation and BCBSM ("GOA").

The Sixth Circuit held that the GOA and the above Retiree Agreement were the controlling written plan documents and that the GOA and Retiree Agreement unambiguously gave the employer the right to terminate benefits.[3] Both the GOA and the Retiree Agreement contained the following right to terminate or modify the plan after thirty day written notice.

> This addendum may be cancelled or amended by Blue Cross and Blue Shield of Michigan following thirty days written notice to the Group or cancelled by the Group following thirty days written notice to Blue Cross and Blue Shield of Michigan. *Boyer, supra,* at 1002.

The BCBSM handbooks and booklet were determined to be summary plan documents. *Boyer, supra,* at 1002.[4]

To determine whether GenCorp reserved its right to modify the Plan under the applicable precedent, the Court must first ascertain which of the myriad of documents are the pertinent Plan documents, and determine if said documents contain the requisite reservation of rights. *In re White Farm Equipment,* 788 F.2d 1186 (6th Cir.1986); *International Resources, Inc. v. New York Life Insurance Co.,* 950 F.2d 294 (6th Cir.1991); and

**3.** The Sixth Circuit held specifically as follows: The GOA and Retiree Agreement clearly state that coverage can be terminated on thirty days' notice; therefore, we conclude that the plan may be terminated on thirty days' notice. Since the unambiguous written provisions of a plan must control, and extrinsic evidence may not be introduced to vary the express terms of a plan, we hold that the district court erred in concluding that the plaintiffs' benefits had vested.

**4.** Contrary to GenCorp's assertion in its April 9, 1993 Supplemental Authority Related to Defendant's Motion for Summary Judgment, the Sixth Circuit in *Boyer* did not determine whether the most recent plan documents controlled over the plan in effect when retirees retired. Rather,

*Boyer, supra.* GenCorp contends that language reserving its right to modify or terminate the instant health benefit Plan appears in two documents distributed to retirees—the 1985 Plan Brochure and the 1985 Plan Handbook, and the Equitable Group Insurance Policy and Equitable Group Certificates provided to several plaintiffs prior to their retirement.

■ The 1985 four-page brochure ("1985 Plan Brochure") included the following language set forth in a box:

> This brochure describes only the main points of the benefit programs. Booklets which will give more detail will be provided in the near future. While the Company expects to continue to provide quality benefit programs such as these for its retirees, it also reserved the right to amend, modify or terminate any of these programs as it considers necessary.

As indicated above, the 1985 Plan Brochure was only an overview of the health benefits program, and advised retirees that the actual Plan documents would be available in the near future. There is some dispute concerning the date the 1985 Plan Brochure was distributed to the retirees; however, since the Court has determined that the Brochure was not part of the controlling Plan documents the dispute is not material.

■ The 1985 Plan Retiree Handbook ("Handbook") was sent in March 1989. The Handbook contained the following language:

> While the Company expects to continue the Plan, it reserves the right to amend or terminate it at any time. Such amend-

since both the Aetna and BCBSM written plan documents were found to reserve the employer's right to modify or terminate health benefits, the Sixth Circuit specifically declined to decide the issue.

> Given the decision we reach below, it is not necessary for us to decide whether the district court correctly concluded that *all* of the plaintiffs' claims should be resolved under the circumstances that existed after BCBSM became the insurance provider. Therefore, we shall assume, without deciding the issue, that the district court properly adjudicated the claims of all the plaintiffs under the post-Aetna circumstances. *Boyer, supra* at 1004.

ment could result in a change or elimination of coverage, change in rates, deductibles and co-payments for retirees, as well as their beneficiaries and dependents.

Under the caption, "Future of the Plans," the following language was included:

The Company expects the Plans to continue indefinitely, but reserves the right to amend or terminate the Plans at any time. Such amendments could result in a change or elimination of coverage and rates for active employees and retirees, as well as their dependents.

Rather than making specific reference to the applicable insurance policy(s) or certificates, the Handbook, like the 1985 Plan Brochure, informs the participant that more information will be provided in future documents.

■ GenCorp also relies upon language purporting to reserve its rights in the pre–1982 Equitable Group Insurance Policy and Certificates. The 1981 Equitable Group Insurance Policy No. 4220 ("4220 Policy"), effective 1976, included the following language:

On any premium due date the Policyholder [GenCorp] may terminate this policy, or, subject to the Society's approval, may modify, amend or change the provisions, terms and conditions of this policy … The consent of any employee or of any other person referred to in this policy shall not be required to effect such termination or any modification, amendment or change of this policy.

Insurance certificates were also provided to active employees each time an individual received a salary increase. The certificates contained language substantially similar to the excerpt from the 4220 Policy.

The Court concludes that the 4220 Policy and Certificates are the controlling plan documents. After careful review of the various Plan documents, insurance policies and certificates, the Court concludes that the retirees were initially covered under Equitable Group Insurance Policy 4220H. However, the retiree policy 4220H was replaced by the above-quoted 4220 Policy at the latest upon the execution of the 4220 Policy in 1981.[5] Thereafter, both active and retired employees were covered under the 4220 Policy. As early as 1969, the Plan contained GenCorp's unequivocal reservation of rights. The Certificate of Group Insurance for Retired Employees under Group Policy No. 4220H, issued in 1969, contained the following reservation of GenCorp's rights:

**TERMINATION AND CHANGE OF POLICY.** On any premium due date the Employer may terminate the policy or, subject to the Society's approval, may modify, amend or change the provisions, terms and conditions of the policy. No consent of any Employee or any other person referred to in the policy shall be required to effect termination of the policy or any modification, amendment, or change thereof. *Certificate of Group Insurance for Retired Employees,* Appendix to Reply Memorandum, exhibit 19, p. 8.

Therefore, the Court concludes that Policy 4220 and the Certificates of Group Insurance for Retired Employees are the controlling plan documents. *See Musto, supra,* at 903. Although not relying upon their language reserving GenCorp's right to terminate or modify, the Court further concludes that the 1985 Plan Brochure and 1985 Plan Handbook are appropriate summary plan descriptions.

As noted in plaintiffs' Brief in Opposition at 10, retirees formally accepted the Plan by signing an acceptance form.[6] However, the term "Group Insurance Plan for Retired Employees" can only refer to the 4220 Group Policy or Certificates of Group Insurance for

---

**5.** The Group Insurance Policy No. 4220, executed November 13, 1981, and effective on October 1, 1976 provides in pertinent part as follows:
This policy [4220 Policy] is issued in consideration of the payment of premiums as herein provided of [sic] the cancellation of replaced Policy Nos. 4220, 4220D, 4220W, 4220H, 16962PD, 4220A and 14260LT.

**6.** The acceptance form contained the following:
ACCEPTANCE OF INSURANCE PLAN

I hereby accept the Group Insurance Plan for Retired Employees of the General Tire & Rubber Company and certify that the list of names of eligible dependents as shown on the card includes only eligible dependents who were dependents at the time of my retirement. I understand that dependents not covered at the time of retirement and dependents acquired after retirement are not eligible to come into the Plan at any future date.

Retired Employees, both of which contain the above reservation of rights after 1981. When they accepted the Group Insurance Plan for Retired Employees, the plaintiffs also accepted the reservation of rights contained therein.

Guided further by the Sixth Circuit decisions in *Musto, supra,* and *Boyer, supra,* the Court concludes that the above-cited reservation of rights language unambiguously reserves GenCorp's right to modify the Plan. Policy 4220 and the Certificate of Group Insurance for Retired Employees, purportedly issued in 1969, both clearly and unambiguously state GenCorp's unequivocal right to modify or terminate the Plan. Since the unambiguous written provisions of a plan must control, extrinsic evidence may not be introduced to vary the express language of the controlling plan documents. *Boyer, supra,* at 1005.

Therefore, having found an unambiguous reservation of GenCorp's right to modify the Plan, which precludes any extrinsic evidence of oral representations, the Court hereby grants GenCorp's Motion for Summary Judgment as to all three counts of the Complaint.

Furthermore, the Court hereby denies plaintiffs' Motion to Certify Class Action as moot in light of entry of judgment for defendant GenCorp and against plaintiffs.

IT IS SO ORDERED.