**Chaim SCHACHNER, individually and as representative of all similarly situated persons, Plaintiff–Appellant,**

v.

**BLUE CROSS AND BLUE SHIELD OF OHIO and Mutual Health Services Company, Defendants–Appellees.**

No. 94–4217.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 8, 1996.

Decided March 8, 1996.

Rehearing and Suggestion for Rehearing En Banc Denied April 15, 1996.

Before BROWN, WELLFORD, and MILBURN, *Circuit Judges.*

BAILEY BROWN, Circuit Judge.

In this Employee Retirement Income Security Act (ERISA) case,[1] Chaim Schachner sued Blue Cross and Blue Shield of Ohio ("BCBSO") after it refused to pay for cardiac rehabilitation therapy ("cardiac rehab") he received after undergoing a coronary surgical procedure called angioplasty. Schachner contends that the costs of cardiac rehab are covered under the plain language of the insurance certificate BCBSO issued to him. BCBSO counters that the language of the certificate is ambiguous, and that extrinsic evidence proves the parties did not intend to cover cardiac rehab. The district court agreed with BCBSO and granted it summary judgment. Schachner appeals.

Schachner also appeals from the district court's several orders denying his attempts to establish himself as the representative of a class of several similarly situated BCBSO insureds. Additionally, Schachner appeals from the court's dismissal of his various state law claims as pre-empted by ERISA.

For the reasons set forth below, we REVERSE the court's grant of summary judgment on the ERISA claims, and VACATE the court's orders disposing of Schachner's attempts to have a class certified. We AFFIRM the district court's dismissal of Schachner's *individual* state law claims, but VACATE the dismissal of state law claims which could be maintained on behalf of potential class members whose insurance certificates are not controlled by ERISA. We REMAND this case to the district court for further proceedings consistent with this opinion.

Thomas L. Feher (argued and briefed), Kaufman & Cumberland, Cleveland, OH, for Chaim Schachner.

Patrick F. Haggerty (briefed), George F. Karch, Jr. (argued), Thompson, Hine & Flory, Cleveland, OH, for Blue Cross and Blue Shield of Ohio, Mut. Health Services Co.

## I. FACTS

Schachner is a partner in and an employee of the Dallas Shoe Warehouse Co. ("the company"), a partnership specializing in retail shoe sales in Cleveland, Ohio. The company is a member of a group of Cleveland-area

---

1. ERISA controls this case because the health insurance plan under which the plaintiff claims benefits is a "welfare benefit plan" as defined by 29 U.S.C. § 1002(1) (1988).

businesses called the Council of Small Enterprises ("COSE").[2] The company offered its employees health insurance plans which COSE had negotiated with BCBSO.

In May of 1989, Schachner underwent a coronary surgical procedure called angioplasty. Afterward, Schachner's physician prescribed for him a standard cardiac rehab program. Schachner participated in thirty-three treatment sessions over a five-month period. His doctor described the sessions as "consist[ing] of supervised exercise training to strengthen the muscles of the heart and the function of the circulatory system, surveillance of risk factors, appropriate counselling, and monitoring of progressive exercise to return Mr. Schachner to his pre-symptomatic level of function." The nurse who supervised the treatments said that the "sessions consisted of supervised training and exercise to strengthen the cardiovascular system by improving the function of the circulatory system."

BCBSO paid Schachner's claims for the angioplasty procedure, but denied his claims for cardiac rehab on the ground that cardiac rehab is not a covered service under his insurance certificate ("the certificate"). Schachner subsequently filed this suit, asserting claims under ERISA[3] and on state law grounds, on his own behalf and as a representative of a putative class of BCBSO insureds who have been denied coverage for cardiac rehab under similar insurance certificates.

Schachner's certificate includes, in a section headed "Health Care Benefits," a subheading called "Therapy Services." According to the certificate, "Therapy Services" includes radiation therapy, chemotherapy, dialysis treatments, **treatment by physical means,** respiratory and pulmonary therapy, and inpatient speech and occupational therapy. The paragraph addressing treatment by physical means states:

> **Treatment by Physical Means**—The treatment given to relieve pain, restore maximum function and prevent disability

following disease, injury or loss of a body part. Such services include physical treatments, hydrotherapy, heat or similar modalities, physical agents, hyperbaric therapy, bio-mechanical and neurophysiological principles and devices.

While the certificate specifically lists several "Exclusions," cardiac rehab is not among them.

Schachner contends that his cardiac rehab sessions fit squarely within the definition of Treatment by Physical Means. He relied on the affidavit of his physician, in which the doctor states:

> I have found cardiac rehabilitation services, such as those prescribed by me, to be an effective method of restoring function to the heart and circulatory system, combating heart disease, preventing future incidents of acute coronary distress, important adjunction therapy to help cardiac patients resume normal function as promptly as possible, and an effective method of improving of cardiac risk factors to help retard disease progression.

BCBSO, however, claims that it must pay for cardiac rehab only when it is separately listed as a covered service in the insurance certificate. It submitted to the district court copies of insurance certificates with separate listings for cardiac rehab.

## II. ANALYSIS

### A. The contract language at issue is not ambiguous.

#### 1. The appropriate law to be applied

■ We review the district court's grant of summary judgment and denial of partial summary judgment *de novo,* applying the same test as the district court. *E.g., Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d 796, 800 (6th Cir.1994). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material

---

2. It appears from the parties' briefs that COSE is an organization of small businesses existing to advance its members' common interests.

3. 29 U.S.C. § 1132(e)(1) (Supp. V 1993) gives district courts jurisdiction over suits brought by ERISA plan beneficiaries for recovery of benefits allegedly due them.

fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

■■■ We can resolve most of this appeal by determining whether the district court erred in concluding that the meaning of the term "Treatment by Physical Means" is ambiguous. We review a district court's conclusions regarding ambiguity in contract language *de novo*. *Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1376 (6th Cir.) (citing *Boyer v. Douglas Components Corp.*, 986 F.2d 999, 1003 (6th Cir.1993)), *cert. denied*, —— U.S. ——, 115 S.Ct. 667, 130 L.Ed.2d 601 (1994). Contract language is ambiguous if it is subject to two reasonable interpretations. *Id.* (citing *Smith v. ABS Indus.*, 890 F.2d 841, 846–47 n. 1 (6th Cir. 1989)). If a court determines that a contract provision is ambiguous, *then* it "may use traditional methods of contract interpretation to resolve the ambiguity, including drawing inferences and presumptions and introducing extrinsic evidence." *Boyer*, 986 F.2d at 1005.

■■■ Courts may not, however, use extrinsic evidence to create an ambiguity. Rather, the ambiguity must be patent; that is, apparent on the face of the contract. In *Local 783, Allied Industrial Workers v. General Electric Co.*, 471 F.2d 751 (6th Cir.), *cert. denied*, 414 U.S. 822, 94 S.Ct. 120, 38 L.Ed.2d 55 (1973), we wrote that "[o]nly when the court has determined that the contract is ambiguous is a construction of the clause necessary. After a finding of ambiguity has been made, '[extrinsic evidence] is admissible to aid in its interpretation.'" *Id.* at 757 (quoting *Tennessee Consol. Coal Co. v. United Mine Workers*, 416 F.2d 1192, 1198 (6th Cir.1969), *cert. denied*, 397 U.S. 964, 90 S.Ct. 999, 25 L.Ed.2d 256 (1970)). Some have argued, based primarily on our opinion in *International Union, United Automobile Workers v. Yard–Man*, 716 F.2d 1476 (6th Cir.1983), *cert. denied*, 465 U.S. 1007, 104 S.Ct. 1002, 79 L.Ed.2d 234 (1984),[4] that we have broadened our rule on the consideration

of parol evidence since our opinion in *General Electric*. *See Local 836, United Automobile Workers v. Echlin, Inc.*, 670 F.Supp. 697, 701 n. 1 (E.D.Mich.1986) ("The *Yard–Man* line has substantially eroded the *General Electric* principle, at least in the retiree benefits context."). In the 1986 case of *Serrano v. Jones & Laughlin Steel Co.*, 790 F.2d 1279 (6th Cir.1986), however, we stated that "*Yard–Man* did not change the rule stated by this court in [*General Electric*]." *Id.* at 1288. Thus, in this circuit, before a district court can consider extrinsic evidence of the parties' intent, it must find an ambiguity on the face of the contract.

### 2. Applying the appropriate law to this case

The district court ultimately granted summary judgment to BCBSO after concluding (1) that the meaning of the phrase "Treatment by Physical Means" is ambiguous, and (2) that evidence presented by BCBSO eliminated any genuine issue of material fact as to whether the parties intended that phrase to include cardiac rehab.

In 1991, Schachner filed a motion to certify a class of BCBSO insureds who had been denied coverage for cardiac rehab despite the fact that their insurance certificates stated that "Treatment by Physical Means" was a covered service. The district court (Batchelder, J.)[5] denied the motion, stating: "This Court cannot say that in this case the common questions of law and fact predominate over questions affecting only individual members." Explaining itself, the court wrote:

> The language in plaintiff's certificate describing "Treatment by Physical Means" includes the terms "physical treatments" and "physical agents," but does not define these phrases. This language is not only ambiguous; it is unintelligible. Because the clause is clearly ambiguous, parol evidence must come in to clarify what the parties to the contract intended by this language.

---

4. In *Yard–Man*, we stated, among other things, that "even the most explicit language can, of course, only be understood in light of the context which gave rise to its inclusion." 716 F.2d at 1479.

5. This case was filed before then-District Judge Batchelder, before her appointment to the Sixth Circuit Court of Appeals. *After that appointment, the case was transferred to Judge Matia.*

The court determined that the parol evidence could evince differing intentions from one insured's negotiation with BCBSO to the next, and that therefore the issues would not be common to the class.

Nearly three years later, in 1994, in granting BCBSO's motion for summary judgment, the court (Matia, J.) stated: "The law of the case is that the 'Treatment by Physical Means' language *is* ambiguous!" The court then relied on extrinsic evidence submitted by BCBSO, in the form of BCBSO insurance certificates which specifically include cardiac rehab as a covered service, to "hold that plaintiff's Cardiac Rehab is not a Covered Service requiring that Blue Cross reimburse plaintiff under the insurance contract."

 We hold that the district court erred in granting summary judgment. In its 1991 memorandum opinion, the court determined, for the purpose of denying a motion to certify a class, that "Treatment by Physical Means" is an ambiguous phrase. There is no indication in the record before us that, at that point in the litigation, the parties had either briefed or argued the ambiguity issue. Whether or not the prior judge erred in making that *sua sponte* determination in the 1991 memorandum opinion, the later judge erred in relying on the determination as "the law of the case" in 1994. The law of the case doctrine is not so rigid that it requires a judge to follow a prior ruling, which is not a final order and has not been the subject of an appeal, as if the issue is *res judicata. Cale v. Johnson*, 861 F.2d 943, 947 (6th Cir.1988) ("Law of the case directs a court's discretion, it does not limit the tribunal's power."); *Amen v. City of Dearborn*, 718 F.2d 789, 793–94 (6th Cir.1983) ("[T]he doctrine is not so rigid as the rule of *res judicata.*"), *cert. denied,* 465 U.S. 1101, 104 S.Ct. 1596, 80 L.Ed.2d 127 (1984). This would be true when the prior ruling is only part of a decision denying a preliminary motion.

Thus, the later judge should not have granted summary judgment based on BCBSO's extrinsic evidence without making an informed determination that "Treatment by Physical Means" is, in fact, ambiguous. As indicated above, a court cannot make such a determination unless the parties present it with two plausible interpretations of the contract language.

 Schachner contends that there is no ambiguity in the contract provision at issue, because it is clearly defined in the certificate. The certificate defines "Treatment by Physical Means" as "the treatment given to relieve pain, restore maximum function and prevent disability following disease, injury or loss of a body part." It goes on to list the following examples of treatments by physical means, stating: "Such services include physical treatments, hydrotherapy, heat or similar modalities, physical agents, hyperbaric therapy, bio-mechanical and neurophysiological principles and devices." The language of that sentence—specifically, "such services include"—indicates that this list is not exclusive, but rather is intended to illustrate some of the services that fall within the definition of "Treatment by Physical Means." Indeed, if the parties intended the list to be exclusive, there would have been no need to define the phrase at all. Thus, Schachner asserts that we must interpret the phrase "Treatment by Physical Means" as the certificate defines it, and that the parties intended that phrase to include any treatment that falls within the definition.

BCBSO counters with extrinsic evidence, *i.e.,* other insurance certificates which specifically include cardiac rehab as a covered service. BCBSO argues that it considers cardiac rehab to be a covered service only if it is specifically included in the insurance certificate, and therefore the parties could not have intended for cardiac rehab to be covered under the heading "Treatment by Physical Means." As we have explained, however, BCBSO must make its showing of ambiguity *without* resorting to extrinsic evidence. If the contract provision is not ambiguous on its face, the court must enforce it as written.

In *Serrano,* we rejected the plaintiff's attempt to rely on extrinsic evidence to create an ambiguity in an agreement which we found to be patently unambiguous. 790 F.2d at 1288–89. We will not allow BCBSO to attempt the same maneuver here. Only Schachner has drawn a plausible interpretation of "Treatment by Physical Means" from

the text of the certificate. Therefore, we hold that the meaning of that phrase is unambiguous, and that it should be interpreted as it is defined in the certificate. The parties intended to cover "treatment[s] given to relieve pain, restore maximum function and prevent disability following disease, injury or loss of a body part." [6]

Our holding on this issue does not, however, end this case. There may be an issue of fact remaining as to whether Schachner's cardiac rehab sessions fit within the unambiguous definition of "Treatment by Physical Means." Schachner maintains, with evidence to support him (in the form of affidavits from his doctor and rehab supervisor), that his sessions fit squarely within the definition. The evidence Schachner cites is persuasive. Schachner's doctor states in an affidavit that cardiac rehab restores function to the heart and circulatory system, combats heart disease, helps prevent future coronary problems, helps cardiac patients resume normal function, and retards disease progression. BCBSO may wish to present evidence indicating that the sessions Schachner underwent do not fit within the certificate's definition of "Treatment by Physical Means," and we will remand the case for further proceedings on this issue.

 That the insured and the insurer may disagree over whether a particular treatment or procedure falls within an insurance certificate's scope of coverage does not necessarily make the language of the certificate ambiguous. It is often necessary for health insurers to use broad language in drafting insurance contracts. It would be impracticable, if not impossible, to include an exhaustive list of the treatments and procedures covered by a general health insurance contract. The language is ambiguous only if, on its face, it admits of two different interpretations.

## B. The district court erred in denying Schachner's attempts to certify a class.

 We review a district court's grant or denial of class certification for an abuse of discretion. *Kentucky Educators Pub. Affairs Council v. Kentucky Registry of Election Fin.*, 677 F.2d 1125, 1135 (6th Cir.1982). "An abuse of discretion exists when the district court applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *First Technology Safety Sys. v. Depinet*, 11 F.3d 641, 647 (6th Cir.1993).

Through the course of the proceedings below, the district court issued three memorandum opinions in which it denied various attempts by Schachner—through motions to certify and motions to amend—to allege a class narrow enough in scope to obtain the court's certification under Federal Rule of Civil Procedure 23. After reviewing each of the district court's opinions, it is clear that, in every instance, its refusal to certify a class proposed by Schachner stemmed from its 1991 conclusion that "Treatment by Physical Means" is ambiguous. Essentially, the court reasoned that, since the clause at issue was ambiguous, it would have to consider extrinsic evidence of negotiations between BCBSO and its individual insureds or groups of insureds to construe the meaning of the clause. The court reasoned that the individual negotiations probably proceeded differently, and therefore that individual insureds were likely to have different intentions regarding the meaning of "Treatment by Physical Means." The court then concluded that individual questions of law and fact would predominate

---

6. The parties devote considerable portions of their briefs to discussing the procedure this court should follow in construing ambiguous contract provisions. Schachner invites us to outline exactly which common law rules of construction we will follow and invites us to specifically adopt the rule of *contra proferentum*, requiring courts to construe ambiguous contract clauses against the drafting party, in ERISA health insurance cases. BCBSO argues that *contra proferentum* is not applicable to this case because, it claims, the

terms of Schachner's certificate were negotiated by two highly sophisticated parties, *i.e.*, BCBSO and the COSE insurance committee. Schachner counters that there actually were no negotiations over specific terms, but rather that the negotiations focused on different premiums and "benefit bundles."

The arguments the parties advance are interesting and well-supported. Since we hold that the phrase at issue is not ambiguous, however, we need not consider them.

over common ones thus the requirements of Rule 23 would be unsatisfied.

If one assumes that "Treatment by Physical Means" is ambiguous, then the district court's analysis is valid. Our holding that the clause is not ambiguous, however, compels us to vacate the court's orders denying class certification. The district court abused its discretion in basing its denials of class certification on an incorrect legal conclusion, i.e., that the language is ambiguous. In view of our holding, the district court, on remand, should allow Schachner to attempt to certify a class, and should re-examine his proposed class under Rule 23.

### C. Schachner's state law claims are pre-empted by ERISA.

Schachner brought this action under both ERISA and state law. The district court dismissed the following claims brought under state law, finding that ERISA pre-empted the state laws under which the claims were made:[7] (1) a claim for breach of contract, (2) a tort claim for the alleged bad faith refusal to pay an insurance claim, and (3) a negligence claim based on an alleged violation of Ohio's prompt payment statute.

■ Schachner presents two arguments on appeal. First, he contends the district court erred in dismissing the state law claims, since it is possible that some class members (if a suitable class is ever certified) could have insurance policies not governed by ERISA. Schachner points out that if his class includes a member or members who attained their BCBSO insurance in a manner other than through an employee welfare benefit plan, their state law claims would not be pre-empted by ERISA. In view of our holding, supra, that the certificate is not ambiguous, it remains theoretically possible for Schachner to achieve certification of a class that includes members who were denied coverage under insurance policies not regulated by ERISA.

After reviewing the district court's opinions and orders addressing the state law claims, we find that the court initially denied BCBSO's motions to dismiss the claims because of the possibility that some class members could assert state law claims, stating: "Defendant's motion is denied, but without prejudice to its being renewed once plaintiff has [reattempted class certification]." Two years later, after two additional failed attempts to persuade the district court to certify a class, the court dismissed the state law claims. On remand, Schachner will again have an opportunity to propose a certifiable class. We therefore vacate the district court's order dismissing the state law claims, pending its resolution of Schachner's next attempt at certification.[8]

■ Second, in support of his state law bad faith claim, Schachner argues that, even assuming he proceeds individually, the dis-

---

7. ERISA's preemption clause provides:
 Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.
 29 U.S.C. § 1144(a) (1988). For purposes of this section, "[t]he term 'State law' includes all laws, decisions, rules, regulations, or other state action having the effect of law, of any state." 29 U.S.C. § 1144(c)(1) (1988).

8. We seriously doubt, however, that Schachner will be able to persuade the district court to certify a class which includes both state law and ERISA claimants. Schachner, who can assert only federal ERISA claims, would be unable to adequately represent a class which includes state law claimants, because his claims would not be typical of theirs, as Federal Rule of Civil Proce-

dure 23(a)(3) requires. Moreover, while Schachner could seek out a state law claimant to name as an additional class representative, it is unlikely that such a plaintiff would be able to invoke the jurisdiction of the district court; for, being without any federal law claims for relief, the putative representative would have to satisfy the citizenship and amount in controversy requirements of federal diversity jurisdiction. See, Snyder v. Harris, 394 U.S. 332, 340, 89 S.Ct. 1053, 1058–59, 22 L.Ed.2d 319 (1969) (stating that each named plaintiff representing a class must satisfy federal court jurisdictional requirements); see also National Center for Immigrants' Rights v. Immigration & Naturalization Serv., 791 F.2d 1351, 1353 (9th Cir.1986) ("The class certified must be limited to individuals who meet the requirements of the relevant jurisdictional statutes."), vacated on other grounds, 481 U.S. 1009, 107 S.Ct. 1881, 95 L.Ed.2d 489 (1987).

trict court erred in dismissing that claim. Schachner asserts that the ERISA "savings clause" saves the bad faith claim from pre-emption. ERISA's savings clause states, in pertinent part, that "nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A) (1988). Schachner points out that Ohio common law places upon insurers a "duty to act in good faith in the handling and payment of the claims of its insured." *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 452 N.E.2d 1315, 1316 (1983). Schachner asserts that this duty is a law of Ohio which regulates insurance, and thus is saved from ERISA pre-emption.

In *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), the Supreme Court addressed an identical claim regarding a provision of Mississippi common law strikingly similar to the Ohio law at issue in this case. In considering whether a particular law regulates insurance, the Supreme Court first "took what guidance [is] available from a 'common-sense view' of the language of the savings clause itself." *Id.* at 48, 107 S.Ct. at 1553. The Court stated that "to regulate insurance, a law must not just have an impact on the insurance industry, but must be specifically directed toward that industry." *Id.* at 50, 107 S.Ct. at 1554. Next, the Court considered the criteria used to determine whether a practice falls within "the business of insurance" for purposes of the McCarren–Ferguson Act.[9] Specifically, the Court addressed:

> "*[F]irst*, whether the practice has the effect of transferring or spreading a policyholder's risk; *second*, whether the practice is an integral part of the policy relationship between the insurer and the insured; and, *third*, whether the practice is limited to entities within the insurance industry."

*Id.* at 48–49, 107 S.Ct. at 1553 (alteration in original) (quoting *Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 129, 102 S.Ct. 3002, 3009, 73 L.Ed.2d 647 (1982)).

After due consideration, the Supreme Court decided that ERISA pre-empted Mississippi's common law tradition of allowing a tort claim for punitive damages arising out of a bad faith breach of contract. *Id.* at 57, 107 S.Ct. at 1558. Schachner argues, however, that the instant case is distinguishable from *Dedeaux* because, he claims, Ohio allows tort actions for bad faith breaches of contract only against insurers, and not against contracting parties outside the insurance industry. Thus, Schachner maintains that the Ohio law is "specifically directed" toward the insurance industry, and is therefore saved from pre-emption. At first blush, this argument seems appealing. The Supreme Court stated in *Dedeaux*, however, that

> [e]ven though the Mississippi Supreme Court has identified its law of bad faith with the insurance industry, the roots of this law are firmly planted in the general principles of Mississippi tort and contract law. Any breach of contract, and not merely breach of an insurance contract, may lead to liability for punitive damages under Mississippi law.

*Id.* at 50, 107 S.Ct. at 1554.

■ After reviewing the case law, we conclude that, while in Ohio tort actions are generally unavailable in breach of contract cases no matter how willful or malicious the breach, *Ketcham v. Miller*, 104 Ohio St. 372, 136 N.E. 145, 146 (1922), there is an exception to this rule. "[O]nly in those contract situations where a special or fiduciary relationship exists between the parties and imposes a duty of good faith will the breach of [contract] result in a tortious cause of action." *Empire–Detroit Steel Div. Cyclops Corp. v. Pennsylvania Elec. Coil, Inc.*, No. CA–2903, 1992 WL 173313, at \*3 (Ohio.Ct. App. June 29, 1992). Hence, the availability of a tort claim against an insurer for a bad faith refusal to pay a claim does not exist independent of traditional, generally-applicable common law; rather, it exists simply because of the Ohio courts' determination that the relationship between insurer and

---

9. The McCarren–Ferguson Act provides, in part, that "[t]he business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business." 15 U.S.C. § 1012(a) (1994).

insured gives rise to a fiduciary duty, and that a breach of that duty is tortious.

Thus, we conclude that the differences between the Ohio law in this case and the Mississippi law in *Dedeaux* are differences of degree only. As far as ERISA pre-emption is concerned, there is no difference at all. The Ohio common law right to a tort action for an insurer's bad faith breach of an obligation to pay a claim is pre-empted by ERISA.

### III. CONCLUSION

We REVERSE the district court's grant of summary judgment on the ERISA claims, and VACATE the court's orders disposing of Schachner's attempts to have a class certified. We AFFIRM the district court's dismissal of Schachner's individual state law claims, but VACATE the dismissal of state law claims which could be maintained on behalf of potential class members whose insurance certificates are not controlled by ERISA. We REMAND this case to the district court for further proceedings consistent with this opinion.