**Thomas ADAMS, Plaintiff,**

v.

**UNUM LIFE INSURANCE COMPANY OF AMERICA, et al., Defendants.**

**No. 501CV2047.**

United States District Court,
N.D. Ohio,
Eastern Division.

April 29, 2002.

Allen Schulman, Jr., Christopher J. Van Blargan, Law Office of Allen Schulman, Canton, OH, for Plaintiff.

Brett K. Bacon, Michael J. Holleran, Frantz Ward, Brian D. Sullivan, Reminger & Reminger, Cleveland, OH, for Defendants.

## OPINION

GWIN, District Judge.

On August 31, 2001, Defendants Unum Life Insurance Company of America ("Unum") and Boncosky Transportation Services, Inc. ("Boncosky") filed a motion to dismiss Plaintiff Thomas Adams's action for declaratory judgment, breach of contract, bad faith, and punitive damages (Doc. 10). As grounds for its request to dismiss this action, defendants say Adams's action is preempted by the Employee Retirement Security Income Act of 1974 ("ERISA"). Responding on October 15, 2001, Plaintiff Adams filed a motion to convert the defendants' motion to dismiss into a motion for summary judgment (Doc. 19). On November 7, 2001, the Court granted the plaintiff's motion to convert the defendants' motion to dismiss into a motion for summary judgment (Doc. 22).

Defendants Boncosky and Unum move for partial summary judgment on the issue of ERISA preemption. In their motion, the defendants argue that ERISA governs the insurance policy at issue and, therefore, preempts the plaintiff's state claims of breach of contract. Additionally, the defendants argue that because of ERISA's preemption, Plaintiff Adams's claim for bad faith fails.

In response, Plaintiff Adams says that ERISA does not govern the insurance policy in this case because the disability plan falls within a "safe harbor" exemption from ERISA coverage. Plaintiff Adams further says that, even if the safe harbor provision does not apply, his bad faith claim nevertheless 'survives under ERISA's "saving clause."

The Court has jurisdiction under 28 U.S.C. §§ 1331, 1332. The Court finds that the disability plan does not meet the requirements of the "safe harbor" provision, and consequently that ERISA governs the plan. The Court also finds that ERISA's "savings clause" does not act to preserve the plaintiff's bad faith claim. Therefore, the Court grants summary judgment in favor of the defendants on the issue of ERISA preemption.

### I. Background

In July 1999, Plaintiff Adams enrolled in a group disability insurance plan[1] issued to Defendant Boncosky by Defendant Unum. At the time he voluntarily enrolled in the group disability insurance plan, Plaintiff Adams worked as a driver for Boncosky.

After obtaining the disability insurance coverage, doctors diagnosed Plaintiff Adams as having coronary artherosclerosis and chronic obstructive pulmonary disease, hypertension, and dyslipidemia. Because of this diagnosis, on March 4, 2000, Plaintiff Adams filed a notice of claim for total disability and submitted the proper documentation in accordance with the terms of the insurance policy.

Defendant Unum denied Plaintiff Adams coverage, finding his heart condition to be a preexisting condition. The language of Adams's policy defined a preexisting condition as one for which Adams "received medical treatment, consultation, care or services including diagnostic measures, or took prescribed drugs or medicines in the 3 months just prior to [his] effective date or coverage" or one for which Adams "had symptoms for which an ordinarily prudent person would have consulted a health care

---

1. The group disability insurance policy number is 513500–011.

provider in the 3 months just prior to [his] effective date of coverage" (Doc. 31 at 486). In denying Adams coverage because of a preexisting condition, Unum stated that Adams had symptoms of the disabling heart condition for which an ordinarily prudent person would have consulted a health care provider in the three months immediately preceding the effective date of his policy. (Doc. 31 at 485.)

Plaintiff Adams filed suit in Stark County Court of Common Pleas for declaratory judgment, breach of contract, bad faith, and punitive damages. The defendants removed the case to this Court, claiming federal question and diversity jurisdiction. The defendants filed a motion for summary judgment, claiming that ERISA preempts the plaintiff's claims for relief.

## II. Summary Judgment Standard

Summary judgment is appropriate when the evidence submitted shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the nonmoving party's case. *See Waters v. City of Morristown*, 242 F.3d 353, 358 (6th Cir.2001). A fact is material if its resolution will affect the outcome of the lawsuit. *See Daughenbaugh v. City of Tiffin*, 150 F.3d 594, 597 (6th Cir.1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue. *See Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). It is not sufficient for the nonmoving party merely to show that there is some existence of doubt as to the material facts. *See id.*

In deciding a motion for summary judgment, the Court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party. *See Nat'l Enters., Inc. v. Smith*, 114 F.3d 561, 563 (6th Cir.1997). Ultimately, the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Terry Barr Sales Agency, Inc. v. All–Lock Co.*, 96 F.3d 174, 178 (6th Cir.1996) (internal quotation marks omitted).

## III. Discussion

The defendants argue that ERISA governs the group disability insurance policy in this case, whereas the plaintiff argues that the disability insurance plan is exempt from ERISA coverage under the "safe harbor" provision. The plaintiff makes several state law claims against Defendants Boncosky and Unum for denying him benefits under the disability insurance policy. If the policy is an ERISA plan, then Plaintiff Adams's state law claims are preempted, and federal common law will apply to determine whether he is entitled to recovery. *See Thompson v. Am. Home Assurance Co.*, 95 F.3d 429, 434 (6th Cir. 1996) (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56–57, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987)).

### A. ERISA Preemption

■ "In determining whether a plan is an ERISA plan, a district court must undertake a three-step factual inquiry." *Thompson*, 95 F.3d at 434 (citing *Fugarino v. Hartford Life & Accident Ins. Co.*, 969 F.2d 178, 183 (6th Cir.1992)). First, the Court must apply the U.S. Department of Labor's "safe harbor" regulations to determine whether the program is exempt from ERISA coverage. Second, the Court must determine if "there was a 'plan' by inquiring whether 'from the surrounding circumstances a reasonable person [could]

ascertain the intended benefits, the class of beneficiaries, the source of financing, and procedures for receiving benefits.'" *Id.* at 434–35 (alteration in original) (quoting *Int'l Res. Inc. v. N.Y. Life Ins. Co.*, 950 F.2d 294, 297 (6th Cir.1991)). Third, the Court must determine whether the employer established or maintained the plan with the intent of providing benefits to its employees. *See id.* at 435 (citing *McDonald v. Provident Indem. Life Ins. Co.*, 60 F.3d 234, 236 (5th Cir.1995)).

### 1. The "Safe Harbor" Provision

■ In 29 C.F.R. § 2510.3–1(j), the Department of Labor outlined the "safe harbor" criteria, which if satisfied, exempt certain group or group-type insurance programs from ERISA coverage. The safe harbor provision excludes an employee insurance policy from ERISA coverage if: (1) the employer makes no contribution to the policy; (2) employee participation in the policy is completely voluntary; (3) the employer's sole functions are, without endorsing the policy, to permit the insurer to publicize the policy to employees, collect premiums through payroll deductions and remit them to the insurer; and (4) the employer receives no consideration in connection with the policy other than reasonable compensation for administrative services actually rendered in connection with payroll deduction.

*Thompson*, 95 F.3d at 435. "Only if all four of the 'safe harbor' criteria are satisfied" will the policy be exempted under ERISA. *Id.* (citing *Fugarino*, 969 F.2d at 184).

Here, the parties agree that the first, second, and fourth criteria are satisfied. Boncosky did not contribute toward its employees' participation in the policy, rather Plaintiff Adams paid the premium for his insurance policy. (Adams Aff. ¶ 3; Doc. 25 Ex. 1.) Plaintiff Adams's partic-

ipation in the group insurance plan was voluntary. (Pobursky Dep. at 27; Adams Aff. ¶ 4.) Additionally, Boncosky did not receive any consideration in connection with the policy. (Doc. 25 Ex. 1.) Therefore, the issue in this case is whether Defendant Boncosky endorsed the Unum policy.

The Sixth Circuit, in *Thompson*, listed several factors to consider when determining whether an employer endorsed an insurance policy so as to bring it within ERISA coverage. The *Thompson* court noted that when an employer plays an active role in determining which employees are eligible for coverage or in negotiating the terms of the policy, when the plan names the employer as the plan administrator, when the employer provides a summary plan description specifically referring to ERISA in laying out the employees' rights under the policy, or when the plan language specifically states the plan is governed by ERISA, a finding of employer endorsement may be appropriate. *See id.* at 436–37.

■ The proper inquiry to determine if endorsement exists is to examine the employer's involvement in the creation or administration of the policy from the employees' perspective. *See Johnson v. Watts Regulator Co.*, 63 F.3d 1129, 1134, 1137 n. 6 (1st Cir.1995). The Sixth Circuit found the approach of the *Johnson* court to be in keeping with the congressional intent in enacting ERISA. *See Thompson*, 95 F.3d at 436. The Department of Labor considered "'employer neutrality ... key to the rationale for not treating such a program ... as an employee benefit plan.'" *Id.* (quoting 40 Fed.Reg. 34,526 (1975)).

■ Here, the disability plan documents give the name of the policy as the "Boncosky Transportation, Inc." policy. The policy documents say the plan administrator is Boncosky Transportation, Inc. and give

Defendant Boncosky's address and telephone number as the plan administrator's contact information. The plan identifies Defendant Boncosky as the agent for legal service of process on the plan. Boncosky is the policyholder of the group disability plan, and only Boncosky and Unum have the authority to cancel the policy.

The policy language and the summary booklet state that an employee-participant's rights are "governed by the laws of the governing jurisdiction and to the extent applicable by the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments." (Doc. 1 Ex. A; Doc. 25 Ex. B.) The summary booklet of the group long-term disability plan states: "As a participant in this plan, you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA)." (Doc. 25 Ex. B.)

The short-term disability policy is equally explicit about the applicability of ERISA. The policy documents state Boncosky can change the plan in whole or in part, and the documents identify the group disability insurance plan as an "ERISA plan." (Doc. 25 Ex. B.)

The plan offers differing levels of coverage for employees depending upon their particular job description and duties. These levels of coverage depend upon Boncosky's determination of the employees' terms of employment. When presenting the plan to the employees at the time of their enrollment, Boncosky did not give Unum-prepared brochures describing the plan, but rather gave the employees an enrollment form prepared by Boncosky. The enrollment form was printed on Boncosky letterhead, gave Boncosky's address and telephone number, and to enroll, the employee checked a box next to a statement reading: "Yes, I want to participate in the Boncosky Services short term/long term disability plan. I understand the cost of this plan will be deducted from my check each pay period." (Doc. 27 Ex. 2.) The employees received only the Boncosky enrollment form at the time of their decision to enroll. It was not until their benefits went into effect that they received the policy handbooks, which although mentioning Unum's name also bore the Boncosky name on their covers as the name of the plan.

Further, when an employee files a claim under the disability insurance plan, he obtains the claim form from Boncosky, fills out the applicable sections, and returns that form to Boncosky. Boncosky then forwards the claim form to Unum.

■ Though the question of whether an employer endorsed an insurance policy is a mixed question of law and fact, "[i]n some cases, the evidence will point unerringly in one direction so that a rational factfinder can reach but one conclusion. In those cases, endorsement is a question of law ...." *Johnson*, 63 F.3d at 1135 n. 3. Whether an employer endorsed a plan is viewed from the employee's perspective.

Here, no genuine issue of material fact exists regarding whether Boncosky endorsed the group disability insurance policy. By signing the enrollment form, Plaintiff Adams agreed to participate in a plan identified as the "Boncosky Services short term/long term disability plan." The plan documents identified Boncosky as the plan administrator. Plaintiff Adams received his claim form from and returned it to the Boncosky offices. The short-term and long-term disability plan summaries identified the policy as governed by ERISA. Therefore, a reasonable employee would conclude that Boncosky endorsed the plan and that ERISA governed it.

Because Boncosky endorsed the group disability insurance plan at issue, the third element of the safe harbor provision is not satisfied. Therefore, contrary to Plaintiff

Adams's assertions, the policy is not exempt from ERISA coverage.

### 2. Existence of an ERISA Plan

The Court now turns to whether a "plan" exists under the standards in *International Resources*, and if so, whether Boncosky "established or maintained" the plan with an intent to provide benefits to its employees. *See Int'l Res.*, 950 F.2d at 297; *McDonald*, 60 F.3d at 236.

■ According to ERISA, covered plans include any plan that is

established or maintained by an employer or by an employee organization, or by both, to the extent that such plan ... was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment ....

29 U.S.C. § 1002(1). " 'In determining whether a plan, fund or program [exists] a court must determine whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits.' " *Int'l Res.*, 950 F.2d at 297 (alteration in original) (quoting *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir.1982)). If a plan exists, ERISA applies if Boncosky established or maintained the plan with the intent of providing benefits to its employees.

■ Here, the group disability insurance policy qualifies as a plan. Boncosky contracted with Unum to provide short-term and long-term disability benefits to participating employees. Boncosky was identified in the plan documents and acted as the administrator of the plan. The Unum policy described the benefits. The beneficiaries were the enrolled employees and their dependents. The employees re-

ceiving disability coverage paid the insurance premiums. To recover benefits, the employees followed the procedures explained in the policy documents. Boncosky provided the claim forms, and after the employee filled out the required section, Boncosky filed the forms with Unum. Thus, a reasonable person could ascertain the benefits, beneficiaries, source of financing, and procedures for receiving benefits, and conclude that Boncosky established a plan to benefit its employees. *See id.* at 297, 298; *see also McDonald*, 60 F.3d at 236 (finding that a plan existed because the benefits, class of beneficiaries, source of financing, and procedures for receiving benefits were reasonably ascertainable in accordance with *Dillingham* ).

The Court finds, therefore, that the group disability insurance policy constitutes a plan established or maintained by Boncosky with the intent of providing benefits to its employees. Accordingly, ERISA governs the group disability insurance plan at issue in this case.

### B. Bad Faith Claim

■ Because the Court determines that Boncosky's group disability insurance policy is an ERISA plan, the Court now turns to whether ERISA's "saving clause" preserves Plaintiff Adams's state law claim for bad faith. Plaintiff Adams claims that the defendants acted in bad faith when they denied coverage and refused to pay his disability claim. Adams further argues that Ohio law imposes a duty of good faith as part of all insurance contracts, but does not extend that duty to other contracts absent an agreement between the parties. Therefore, Adams says that the Ohio law imposing a duty of good faith is limited to entities within the insurance industry, thus saving his bad faith claim from ERISA preemption.

■ Plaintiff Adams makes his claim for bad faith under Ohio state law. The sav-

ing clause under ERISA exempts state law causes of action from ERISA preemption when the regulation: (1) "has the effect of transferring or spreading a policyholder's risk," (2) "is an integral part of the policy relationship between the insurer and the insured," and (3) "is limited to entities within the insurance industry." *UNUM Life Ins. Co. of Am. v. Ward,* 526 U.S. 358, 367, 119 S.Ct. 1380, 143 L.Ed.2d 462 (1999).

Plaintiff Adams argues that in Ohio, the duty of good faith extends only to insurance contracts, and not to contracts in general. Because a duty of good faith is not required, absent agreement, in other contracts, Plaintiff Adams says that bad faith is a law that regulates insurance like the law at issue in *Ward.* Adams further argues that the Supreme Court, in *Ward,* clarified the holding of *Dedeaux,* which found ERISA to preempt a cause of action under Mississippi law for bad faith.

In *Dedeaux,* the Supreme Court held that ERISA preempted the Mississippi law of bad faith. *See Dedeaux,* 481 U.S. at 56, 107 S.Ct. 1549. In finding that the law of bad faith was not directed specifically toward the insurance industry in Mississippi, the Court noted that "[a]ny breach of contract, and not merely breach of an insurance contract, may lead to liability for punitive damages under Mississippi law." *Id.* at 50, 107 S.Ct. 1549. The Supreme Court reasoned that "[e]ven though the Mississippi Supreme Court has identified its law of bad faith with the insurance industry, the roots of this law are firmly planted in the general principles of Mississippi tort and contract law." *Id.*

Applying this rule in the context of Ohio law, the Sixth Circuit in *Schachner v. Blue Cross & Blue Shield,* 77 F.3d 889 (6th Cir.1996), found a claim for bad faith under Ohio law "strikingly similar" to the law at issue in *Dedeaux. Id.* at 897. In *Schachner,* the Sixth Circuit "conclude[d] that

the difference between the Ohio law in this case and the Mississippi law in *Dedeaux* are differences of degree only," and found ERISA to preempt the bad faith claim. *Id.* at 898.

Plaintiff Adams argues, because the Supreme Court in *Ward* reaffirmed that all state law causes of action are not preempted by ERISA, his bad faith cause of action is saved. Adams says that after *Ward,* courts have found that bad faith claims survive ERISA preemption. *See, e.g., Lewis v. Aetna U.S. Healthcare, Inc.,* 78 F.Supp.2d 1202 (N.D.Okla.1999); *Colligan v. UNUM Life Ins. Co. of Am.,* No. Civ.A. 00–K–2512, 2001 WL 533742 (D.Colo. Apr. 23, 2001). Adams argues that under the reasoning in *Ward,* Ohio's bad faith law applies only to insurance contracts and is therefore saved from ERISA preemption.

Even if Plaintiff Adams is correct in arguing that *Ward* clarified the scope of *Dedeaux* such that the Sixth Circuit was incorrect, in *Schachner,* to extended the reasoning of *Dedeaux* to preempt Ohio bad faith claims, nevertheless *Schachner*'s holding has not been abrogated. Therefore we are bound by the Sixth Circuit's decision.

Thus, in accordance with *Schachner,* and unlike the regulation at issue in *Ward,* Ohio's requirement of good faith is not limited only to the insurance industry. *See Ward,* 526 U.S. at 368–69, 119 S.Ct. 1380 (noting that the notice-prejudice rule at issue, by its own terms, was directed specifically at the insurance industry). Rather, Ohio law's recognition of a cause of action for bad faith stems from generally applicable common law principles.

The Sixth Circuit, in *Schachner,* rejected a claim for bad faith under circumstances similar to the present case. Like Plaintiff Adams, the plaintiff in *Schachner* argued that Ohio law allowed tort actions for bad faith breaches of contract only against in-

surers and not against contracting parties outside of the insurance industry, and therefore, the regulation was specifically directed at the insurance industry. *See id.* at 897. The Sixth Circuit rejected this argument, stating

> After reviewing the case law, we conclude that, while in Ohio tort actions are generally unavailable in breach of contract cases no matter how willful or malicious the breach, there is an exception to this rule. "[O]nly in those contract situations where a special or fiduciary relationship exists between the parties and imposes a duty of good faith will the breach of [contract] result in a tortious cause of action." Hence, the availability of a tort claim against an insurer for bad faith refusal to pay a claim does not exist independent of traditional, generally-applicable common law . . . .

*Id.* at 897 (alteration in original) (internal citations omitted).

Plaintiff Adams argues that by denying him coverage on his disability claim, the defendants acted in bad faith. Because Plaintiff Adams cannot show that Ohio's good faith requirement is limited to the insurance industry, he cannot make out his claim that the saving clause preserves his state law claim for bad faith from ERISA preemption. *See Schachner*, 77 F.3d at 898 ("The Ohio common law right to a tort action for an insurer's bad faith breach of an obligation to pay a claim is pre-empted by ERISA."). Accordingly, the Court grants the defendants' motion for summary judgment on this issue.

### IV. Conclusion

For the foregoing reasons the Court finds that ERISA governs Boncosky's group disability insurance policy. Therefore, ERISA preempts Plaintiff Adams's state law claims. The Court also holds that ERISA's saving clause does not exclude Plaintiff Adams's claim for bad faith breach of contract from ERISA preemp-

tion. Accordingly, the Court grants Defendants Boncosky and Unum's motion for partial summary judgment on the issue of ERISA preemption.

IT IS SO ORDERED.

### ORDER

The Court orders that on or before May 7, 2002, the parties are to file notice of whether the review of the Administrative decision regarding the denial of benefits to Plaintiff Thomas Adams is before the Court. If review of the Administrative decision is before the Court, the parties are to file briefs with citations to authority and to the record regarding their position as to what standard the Court should apply in reviewing this decision on or before May 9, 2002. On or before May 14, 2002, the parties are to file opening briefs. The parties must respond to the opening briefs on or before May 21, 2002.

IT IS SO ORDERED.